## 𝔖taunton.

## LIGGETT V. ROANOKE WATER COMPANY.

### September 17, 1919.

1. CORPORATIONS—*Diversion of Assets—Stockholder's Suit—Refusal of Directors to Act—Demand on Directors Useless—Case at Bar.*—A stockholder may maintain a suit for a wrongful diversion of the assets of a corporation if he alleges and proves that a request or demand has been made upon the board of directors, or other body managing the corporation, to institute proceedings against the wrongdoer, and that they have refused to do so after a reasonable request or demand, or upon the allegation and proof of such facts as show that it is reasonably certain that a demand for corporate action would have been useless. In the instant case, it was manifest that the officers and directors would have declined to institute proceedings for the recovery of the fund involved, and therefore complainant, a stockholder, might maintain the suit.

2. OPTIONS—*Transfer of Option—Assignee Bound by Terms of Option—Corporations—Promotion Expenses—Case at Bar.*—The owners of a majority of the capital stock of the complainant, a corporation, which owned and operated a water works, entered into a contract with one J., subsequently approved and ratified by complainant corporation, whereby they give him an option to buy the property of complainant used in its water supply business, upon the following terms: The vendor was to receive $550,000 of 6 per cent. preferred stock of a new corporation to be organized by the vendee. The new corporation was then to issue $800,000 of bonds, which were to be sold at a price not less than 90 per cent. of par, the proceeds of the sale to be used to pay the vendors the sum of $526,800, $1,800 to pay expenses of incorporation and organization, etc., to pay the bond and floating debt. of complainant, and the remainder to be retained in the treasury of the new corporation for working capital and improvements. The promoter, J., transferred his interest under this contract to L., for $75,000 in cash and $50,000 in the common stock to be issued by the new company.

*Held:* That L. could not discharge its obligation to J. by the payment of the $75,000 in cash due J. out of the proceeds of the sale of bonds by the new corporation, and that the new corporation could not ratify such payment.

3. OPTIONS—*Transfer of Option—Assignee Bound by Terms of Option—Corporations—Promotion Expenses—Case at Bar.*—The complainant as the original owner of the property had the right to impose conditions upon its transfer. That the proceeds of the bonds to be issued were to be used for certain specified purposes was one of the conditions actually imposed, and one of these specified purposes was the provision for a substantial sum of money for working capital and improvements to the property. This condition was violated by the payment of the $75,000 out of the bonds issued by the new company to the first promoter for the transfer of the option, and consequently the company was left without such working capital to the detriment of the complainant and its other stockholders who have the right to insist upon the observance of the conditions imposed by the contract under which the property was transferred.

4. OPTIONS—*Transfer of Option—Assignee Bound by Terms of Option—Corporations—Promotion Expenses—Acquiescence in Payment to Promoter—Case at Bar.*—The majority stockholders of complainant corporation gave an option on the property of the corporation to one J., which option was subsequently ratified by complainant corporation. J. transferred his option to L. in consideration of $75,000 in cash and $50,000 in stock in a new corporation to be organized to take over complainant corporation's business. L. paid J. $75,000 out of the proceeds of bonds issued by the new corporation. There was some evidence that the majority stockholders had knowledge of the purpose to pay J. out of the proceeds of the bond sale, though it was not convincing, and the weight of the testimony was to the contrary. Even, however, if it were true that they acquiesced therein, their acquiescence could not prejudice or impair the rights of complainant company. It had ratified and approved a contract the terms of which were sufficiently clear to indicate substantially the disposition which was to be made of the proceeds of the bonds. By no fair construction thereof can it be said that the payment of the $75,000 as a promotion fee was thereby authorized. The purpose of the complainant company indicated in the contract was to provide for the payment of its debts, and for the acquisition of a substantial sum for working capital and improvements. In ratifying it the design was to increase and not to diminish

the gross assets, and the defendant company must be deemed to have bought the property with full notice of the original contract of sale, and is therefore bound to comply with its terms.

Appeal from a decree of the Circuit Court of city of Roanoke. Decree for complainant. Defendant appeals.

*Affirmed.*

The opinion states the case.

*Hall, Wingfield & Apperson, W. W. Coxe* and *Storey, Thorndyke, Palmer & Dodge,* for the appellant.

*Jackson & Henson* and *Roy B. Smith,* for the appellee.

PRENTIS, J., delivered the opinion of the court.

[1]    This is an appeal from a decree holding John E. Liggett responsible for $75,000, alleged to have been wrongfully diverted from the assets of the Roanoke Water Works Company, a corporation of which he is the president. The appellee, the Roanoke Water Company (hereinafter called the complainant), is a stockholder of the Roanoke Water Works Company, and instituted this suit under the well-established and admitted doctrine that a stockholder may maintain such a suit for a wrongful diversion of the assets of a corporation if he alleges and proves that a request or demand has been made upon the board of directors, or other body managing the corporation, to institute proceedings against the wrongdoer, and that they have refused to do so after a reasonable request or demand; or upon the allegation and proof of such facts as show that it is reasonably certain that a demand for corporate action would have been useless. *Mount* v. *Radford Trust Co.,* 93 Va. 430, 25 S. E. 244; *Va. Passenger & Power Co.* v. *Fisher,* 104 Va. 126, 51 S. E. 198.

[2, 3]    The facts out of which the controversy arises are these: On the 9th day of December, 1915, S. D. Ferguson and E. M. Funkhouser, who were the owners of a majority of the capital stock of the complainant, which owned and operated the water works which supplied water to the city of Roanoke, entered into a contract with Newton Jackson, of Philadelphia, subject to the approval and ratification of the company, whereby they gave him an option to buy such part of the property as was used in its water supply business, for these considerations: The vendor was to receive $550,000 of six per cent preferred stock of a new corporation to be organized by the vendee, and there was to be issued $800,000 of first mortgage six per cent bonds upon the property conveyed, which were to be sold at a price not less than ninety per cent of par; and then the contract provides: "The proceeds of the $800,000 bonds to be sold now to be used to pay the vendors the sum of $526,800 and $1,800, as per clause B, to pay expenses of incorporation and organization, and to pay the bond and floating debt other than the accounts payable and pipe-line contracts, and the remainder is to remain in the treasury for working capital and improvements to the property." There are other provisions, but as the proper construction of the clause just quoted determines the controversy, no other recital of the contents of the contract is necessary.

After this contract had been executed, the stockholders of the complainant company ratified it at a meeting, duly called for the purpose. Jackson then interested Liggett, Hichborn & Co., Inc., in the matter and sold his rights under the contract to that corporation for a consideration named in his letter at $125,000 and in the letter to him accepting his proposition as $75,000 in cash and $50,000 or one-fifth of the common stock to be issued by the new company. Jackson's letter describes the transaction thus:

"This is to confirm our verbal agreement whereby you have the option of assuming my position in the purchase of the Roanoke Water Company, in consideration of the sum of $125,000, to be paid on or before January 10, 1916. In assuming my position under said contract of purchase, I am to be relieved of all liability and I agree to secure, if possible, such modifications of the agreement as you desire." In the letter of Liggett, Hichborn & Co., Inc. (by John E. Liggett), accepting Jackson's proposition, this language is used: "We beg to confirm our understanding whereby we have purchased your position in the matter of the Roanoke Water Company for $75,000 in cash and $50,000, or one-fifth of the amount, of common stock to be issued in the new company. The terms of your agreement with the present owners of the property are accepted by us also." Thereupon, the new water company was organized and the transfer of the property accomplished for the considerations named in the original contract with Jackson. As indicating how clearly all of the parties recognized their obligation to carry out the original contract, this appears in the proposition of Jackson which was accepted by the new company: "I hereby propose to and do hereby subscribe to the entire authorized capital stock of your company (except directors' shares), five hundred and fifty thousand ($550,000) dollars par value of preferred stock, bearing an annual cumulative dividend of six per cent. payable three per cent semi-annually and two hundred and fifty thousand ($250,000) dollars par value of common stock of your company, upon condition that you will accept in full payment therefor the deed mentioned and herewith tendered conveying the property, rights and franchises therein set out, free of encumbrances, except taxes for the current year, and upon the further condition that your company will, as of this date, authorize and issue, or cause to be issued, its

first-mortgage, six per cent twenty-year gold bonds to the aggregate amount of eight hundred thousand ($800,000) dollars at par, to be dated January 1, 1916, and payable on January 1, 1936, with interest at the rate of six per cent, payable semi-annually, on the first day of January and July of each year, and to be redeemable at one hundred and two (102%) per cent on any interest-payment day before maturity, to be sold at a price of not less than ninety (90%) per cent, the proceeds of the eight hundred thousand ($800,-000) dollars of bonds to be used to pay the Roanoke Water Company the sum of five hundred and twenty-six, eight hundred ($526,800) dollars, and also the sum of eighteen hundred ($1,800) dollars, and to pay the expenses of incorporation and organization of your company, and to pay the bonded and floating debt, other than the accounts payable, and pipe-line contracts, of the Roanoke Water Company; the remainder of said issue of eight hundred thousand ($800,000) dollars to remain in the treasury of the corporation for working capital and improvements to the property."

It is clear, then, under the original contract which John E. Liggett, for Liggett, Hichborn & Co., Inc., assumed, that the complainant company undertook to control the disposition of the proceeds of the $800,000 of bonds by providing therein for the payment to itself of $526,800, the sum of $1,800 to pay expenses of incorporation and organization and to pay the bond and floating debt other than accounts payable and pipe-line contracts, and that the remainder was to remain in the treasury for working capital and improvements to the property.

The matter proceeded as contemplated by all the parties interested, except that Liggett, Hichborn & Co., Inc., under the direction of John E. Liggett, who is also its president, having control of the proceeds of the sale of the $800,000

of bonds, discharged its own obligation to Jackson under its contract with him by paying out of these proceeds the $75,000 which it had contracted to pay him for the privilege of assuming his position under the contract. This payment is defended upon the ground that it is proper and customary to pay promoters' fees out of the funds of the corporation promoted.

There are three assignments of error.

1. The first is that the complainant has not shown a sufficient excuse for its failure to apply to the directors of stockholders to take action for the recovery of the funds involved in this case. The complainant is suing as a stockholder of the new company. In the discussion of this assignment we are referred to numerous authorities, but in as much as counsel agree upon the general doctrines of law which are applicable we do not deem it necessary to review them. It is sufficient to say that the evidence submitted shows a *prima facie* case in favor of the complainant, making it reasonably certain that because of the personal interest of John W. Liggett, the president of the Roanoke Water Works Company, and also of Liggett, Hichborn & Co., Inc., and of his intimate business relations with other directors of the Roanoke Water Works Company, a demand for corporate action by the other directors against him, or against Liggett, Hichborn & Co., Inc., would have been useless. This inference which may be fairly drawn from the testimony is made absolutely conclusive by the answer of the Roanoke Water Works Company, which justifies and vigorously defends the action of John E. Liggett in making the payment complained of. The suggestion in argument that possibly this answer was not authorized by the directors cannot be entertained, because it is filed by reputable counsel who also represent John E. Liggett, and it has not been disclaimed by the company. The defendant, Liggett,

is claiming the benefit of that answer, and under these circumstances it must be taken as representing the deliberate attitude of the directors and stockholders controlling the company.  It is also suggested that possibly if these directors had been properly approached before the suit was instituted that their attitude might have been different.  This does not impress us as having any merit, because the directors are trustees whose duty it is to protect the assets of the company and the interest of its stockholders.  This is a continuing duty, and the institution and prosecution of this suit does not relieve them therefrom.  The complainant is entitled to prosecute this suit because it is manifest that the officers and directors would have declined to institute proceedings for the recovery of the fund involved.

2. The second assignment of error is that the suit cannot be maintained because the act complained of was one which the stockholders or directors of the Roanoke Water Works Company could in the exercise of their discretion have properly exercised.  This takes us back to the contract under which the Roanoke Water Works Company acquired the property and issued the bonds.  The complainant as the original owner of the property had the right to impose conditions upon its transfer.  That the proceeds of the bonds to be issued were to be used for certain specified purposes was one of the conditions actually imposed, and one of these specified purposes was the provision for a substantial sum of money for working capital and improvements to the property.  This condition has been violated by the defendant, John E. Liggett, and consequently the company is left without such working capital to the detriment of the complainant and its other stockholders who have the right to insist upon the observance of the conditions imposed by the contract under which the property was transferred.  This contract is exhibited with and relied upon in the bill.

[4]   3. The third assignment is that the complainant knew of and acquiesced in the payment to Jackson, and that this precludes it from maintaining this suit.   While there is some evidence to the effect that Ferguson and Funkhouser had such knowledge of the purpose to pay Jackson out of the proceeds of the bond sale, it is not convincing, and the weight of the testimony is to the contrary.   Even if it were true that they acquiesced therein, their acquiescence cannot prejudice or impair the rights of the complainant company.   It had ratified and approved a contract, the terms of which were sufficiently clear to indicate substantially the disposition which was to be made of the proceeds of the bonds.   By no fair construction thereof can it be said that the payment of the $75,000 as a promotion fee was thereby authorized.   The purpose of the complainant company indicated in the contract was to provide for the payment of its debts, and for the acquisition of a substantial sum for working capital and improvements.   In ratifying it, the design was to increase and not to diminish the gross assets, and the defendant company must be deemed to have bought the property with full notice of the original contract of sale, and is therefore bound to comply with its terms.   Then, turning to the agreement of Jackson with Liggett, Hichborn & Co., Inc., it is manifest that neither the complainant nor the new company incurred any additional obligation as the result of that agreement.   Liggett, Hichborn & Co., Inc., by John E. Liggett, agreed to pay the consideration demanded by Jackson therefor, and the consideration to be received therefor by Liggett, Hichborn & Co., Inc., was the major portion of the common stock of the new company, which enabled it to control its operation, name its officers and fix their salaries.   We do not know whether these considerations were worth $75,000, but whether they were or not, Liggett, Hichborn & Co., Inc., promised to pay

that amount to Jackson therefor, and the payment of this their personal debt, under the direction of John E. Liggett, of the assets of the Roanoke Water Works Company was a violation of that contract, a wrong to its stockholders, and clearly unauthorized.

The evidence sustains the conclusions of the trial judge.

*Affirmed.*