# Richmond

ANNA D. FREED, INDIVIDUALLY, ETC. v. JUDITH REALTY AND FARM
PRODUCTS CORPORATION, TRUSTEE, ET AL.

April 25, 1960.

Record No. 5062.

Present, All the Justices.

The opinion states the case.

*Thomas L. Woodward* and *William W. Jones*, for the appellant.

*Eastwood D. Herbert* and *M. T. Bohannon, Jr.* (*Herbert & Bohannon*, on brief), for the appellees.

MILLER, J., delivered the opinion of the court.

The Judith Realty and Farm Products Corporation, hereinafter called Judith Realty, and Carolyn Freed Peterson, Barbara Jean Freed, Charles S. Freed, and Loring Freed, stockholders in the corporation, instituted suit for a declaratory judgment and consequential relief against Anna D. Freed, individually and as administratrix, c.t.a. of the estate of Charles C. Freed, deceased. The object of the suit is to have the court determine that a written declaration of trust whereby Charles C. Freed, hereinafter called Freed, transferred 349 shares of his stock in Judith Realty to that corporation as trustee for designated purposes, was a valid inter vivos trust and to direct the trustee to administer the trust according to its terms.

The bill alleged that on April 1, 1955, Freed executed a trust agreement, which is made a part of the bill, wherein Judith Realty was named as trustee and 349 shares of its capital stock due Freed were issued and transferred to the "C. Freed Trust Fund" from which an annuity of $1,500 was to be paid to Freed during his life, and at his death the corporation was to become the owner of the trust stock; that acceptance and execution of the trust by Judith Realty was authorized on the same day at a meeting attended by all stockholders, the minutes of which are made a part of the bill. The chief prayer of the bill was that the court declare the instrument to be a valid inter vivos trust, the effect of which would be to deny Anna D. Freed any rights in the trust property, individually or as administratrix, c.t.a.

In her answer Anna D. Freed admitted that the assets of the corporation were correctly enumerated in the bill, denied the validity of the trust and asserted that it was an ineffectual, fraudulent and wilful attempt to defeat her rights.

The cause was heard upon the bill, certain exhibits, and the answer of Anna D. Freed. From a decree that adjudicated the principles of the cause, declared the trust to be a valid inter vivos trust, directed the officers of Judith Realty to administer the trust according to its terms and referred the cause to a commissioner for an accounting to determine what was due, if anything from the corporation or Freed to the other, Anna D. Freed appealed.

The terms of the trust agreement were that Judith Realty pay Freed $1,500 annually for the remainder of his life from dividends of the trust fund or from purchase by the corporation of shares of the trust fund sufficient to provide the $1,500 yearly. In the instrument Freed reserves the right to vote the trust stock at all stockholders meetings, and upon his death the shares then remaining in the trust are to become treasury stock of Judith Realty, which would leave the four individual complainants the sole stockholders in the corporation. The assets of the corporation consisted of stock in Atlantic Permanent Building and Loan Association worth $10,000; United States bonds worth $10,000; and a six-family apartment building worth $18,000; the corporation had no liabilities except current bills incident to operation of the apartment building. Loring Freed was president of the corporation and Charles C. Freed was secretary-treasurer and manager until his death on September 25, 1958, after which his widow, Anna D. Freed, qualified as administratrix, c.t.a. of his estate.

The minutes of the meeting of all the stockholders held April 1, 1955, recite that Freed said that he had put about $30,000 into the corporation but "had never been issued proper shares for his money" and now desired to create a trust fund from his holdings which amounted to 349 shares; that by an express declaration of trust he had appointed Judith Realty as trustee to hold the trust shares in the C. Freed Trust Fund, and at his death the corporation "becomes the Beneficiary." The minutes, signed by all stockholders, including Freed, then provide that "In consideration of the fact that the above mentioned Corporation becomes beneficiary of the C. Freed Trust Fund at Mr. C. Freed's demise, the above mentioned Corporation covenants, contracts and agrees to pay the creator of the above mentioned Trust Fund, Mr. C. Freed, the sum of $1,500 per year for the rest of Mr. C. Freed's life. If for any reason the above mentioned 349 C. Freed Trust shares do not yield as much income as $1,500 per year then the payment of $1,500 per year to Mr. C. Freed is to be considered as an annuity, a part of $1,500 then will be earned interest or income, and a part will be considered a return of capital, thus reducing the number of Trust Funds shares from year to year." Another paragraph of the minutes provides that as Carolyn, Barbara and Charles S. Freed will own all the outstanding stock of the corporation, excepting one share, at Freed's death because of the retirement of the 349 shares, they "agree and promise to take over the

affairs" of the corporation, and in event of Freed's becoming mentally or physically incapacitated, they agree and promise to see that Freed "continue to get the $1,500 so long as he may live," but no liability is assumed by the "individual members of the corporation."

It appears from the minutes that upon issuance of the 349 shares of stock to the trust fund, there were 151 other outstanding shares owned as follows: Loring Freed, one share; and Carolyn, Barbara, and Charles S. Freed, fifty shares each, which had been given to them by Loring Freed, their father. It was agreed in the minutes that Freed remain as executive secretary and treasurer so long as he was mentally and physically able to administer the corporation's affairs, and he was authorized to vote the trust fund stock at all meetings.

The only exhibits in evidence other than the trust agreement and corporate minutes were the certificate of 349 shares of stock issued to "The C. Freed Trust Fund", an unprobated will executed by Freed on July 5, 1952, leaving his property to his wife, and a copy of Freed's last will executed July 7, 1952, which revoked all previous wills and was probated October 28, 1952. By this will Freed gave all of his estate, real and personal, to his nieces and nephew, Barbara, Carolyn and Charles S. Freed, except his "money in bank" and his household furniture, which he left to his wife, Anna D. Freed, and he appointed his brother, Loring Freed, as trustee with direction to collect and pay to his wife so long as she lived the net income from his shares of stock in the Loring Realty Corporation, but only on condition that she "Waive all dower rights, homestead rights or any rights or interest in my estate, either real or personal, which the law might give her. * *"

The will concludes with this paragraph:

"(6) This will is made in accordance with my life long intentions of keeping our little family fortune together in the Freed family so I organized the Loring Realty Corp for this purpose; as a place of Investment for the Freed Bros and their Children; So I want to see the principal of our small amt of money kept to-gether and handed down to the Freed heirs."

It is asserted and not denied that Freed left no "money in bank," and the value of his household furniture was trivial.

Anna D. Freed challenges the validity of the trust. She asserts that Freed made no present disposition of the property; that the trust is illusory because there has been no separation of the legal title and equitable interest in the trust stock, and that it is a mere device

to defraud her of her marital rights. It is argued that by retaining a life interest in the stock, with the right to invade the corpus, if necessary, to make up the yearly $1,500, and by retaining the right to vote the 349 shares of stock and continue as active manager of the corporation, Freed had, in fact, retained full control of the corporation and thus enjoyed the power to terminate the trust and reclaim the stock. It is insisted that the corporation is merely Freed's *alter ego* and that the instrument violates the fundamental requirements of a valid inter vivos trust. The principle relied upon by appellant is stated as follows in 54 Am. Jur., Trusts, §§ 34, 35, 36:

"It is essential to the creation of an express trust that the settlor presently and unequivocally make a disposition of property by which he divests himself of the full legal and equitable ownership thereof. He may make himself the trustee or one of the trustees, thus retaining the legal title in whole or part, or by making himself the beneficiary or one of the beneficiaries of the trust, he may retain the equitable ownership in whole or part, but he cannot retain the full legal and equitable ownership. * * *"

\* \* \* \* \* \* \*

"A fundamental essential of any trust is separation of the legal estate from the equitable estate and the beneficial enjoyment; there can be no trust when both the legal title and the beneficial interest are in the same person. * * *"

\* \* \* \* \* \* \*

"No trust can exist in respect of property where the holder of the legal title can under its present disposition withdraw it from the trust and apply it unqualifiedly to his own use or to any object that he chooses. In other words, there is no property or fund which can be the subject matter of a trust where its application to the purposes of the trust depends upon the absolute and unconditional discretion of the person in control of the property or fund. Unbridled discretion in a trustee not only negatives the necessary separation of legal and equitable ownerships, but is also objectionable, in so far as the existence of a trust is concerned, by reason of the uncertainty that it involves. * * *"

The fact that Freed's purpose in executing the trust and agreeing to the contractual provisions in the corporate minutes of April 1, 1955, may have been to prevent his wife from obtaining any part of the trust fund property at his death through operation of the statute of descent and distribution if he died intestate or through

renunciation of his will if he died testate, does not render the trust invalid. In *Lightfoot* v. *Colgin*, 5 Munf. (19 Va.) 42, argued in 1813, and decided in 1816, opinions were delivered by each of the judges. In a majority of the opinions the principle that a wife has no interest in her husband's personal property during his life, and the husband may do as he will with his personal estate, was declared. There at page 63, Judge Brooke said:

"* * * [A]dmitting * * *, that the deeds were executed with the intention to defeat the claims of the wife to that portion of the estate to which she would have been entitled in the event that her husband had died intestate, or leaving a will which she might renounce; the inquiry is, whether the wife has such an interest in the personal estate of the husband during coverture, that a fraud has been committed upon it by the operation of the deeds in question."

The court held that the wife had no such interest and decided that no fraud was committed upon her when her husband, during his lifetime, divested himself of his personal porperty so that he could not recover it. In 1850 a like question was before the court in *Gentry* v. *Bailey*, 6 Gratt. (47 Va.) 594. The court there decided (and in doing so expressly reaffirmed its decision in the *Lightfoot* case) that a married man enjoyed during his lifetime the unqualified privilege to dispose of his personal estate, whatever be his purpose in doing so, provided that he so dispossess himself of it as to put it beyond his power to reclaim. In the unanimous decision delivered by Judge Baldwin, it is said:

"Nor do I deem it at all material by what motive the husband was actuated in making the disposition of his property. Inasmuch as the law recognizes his perfect right to give away from his wife in his lifetime his whole personal estate, it is nowise relative to enquire by what sentiment, or prejudice, or passion, he was impelled to exercise that right. * * *" (At page 605.)

In 1909 in *Hall* v. *Hall*, 109 Va. 117, 63 S. E. 420, the principle applied in the *Lightfoot* and *Gentry* cases was approved and adhered to. Referring to those two decisions the court said:

"The question was again before the court in the year 1850, in *Gentry & als.* v. *Bailey*, 6 Gratt. 594, and the court, following the decision in *Lightfoot's Executors* v. *Colgin and wife*, held, that 'A conveyance by a husband, by which he parts absolutely with an interest in personal property; though it is not to take effect until his death, and though he retains the power to sell and reinvest or ac-

count, and also to reappoint among specified objects, is valid to bar the wife of her distributive share therein.' " (At page 120.)

■ Here the difficulty arises in determining whether or not the trust agreement, and the minutes of the corporation which contain contractual obligations, separated equitable interests in the stock from the legal title and thus presently conveyed and put the 349 shares of stock beyond Freed's power to reclaim. The trust agreement and the minutes, executed, adopted and signed the same day, must be considered together for the latter, under authority of which the trust was accepted by the corporation, contains contractual obligations supplementing, but not in conflict with, the trust.

The two instruments constitute something more than a voluntary inter vivos trust in which a beneficial life interest with a limited right to invade the corpus is reserved and a degree of control over the trustee retained by virtue of the right to vote the trust stock. No power of revocation is reserved in the trust and by its terms and under the contractual provisions of the minutes, ownership of the corpus of the trust that remains at settlor's death is, for a valuable consideration, presently vested in the corporation to be enjoyed by it and stockholders other than Freed after settlor's death.

"If the beneficiary acquires an interest during the lifetime of the settlor, the disposition is not testamentary within the requirements of the Statute of Wills merely because it takes effect in enjoyment or possession on the settlor's death. If the owner of property transfers it to another person upon trust to pay the income to the settlor himself during his lifetime and to pay the principal to a designated third person on his death, and the settlor reserves no power to revoke or modify the trust, the trust is undoubtedly not testamentary. The disposition is final and definitive during the lifetime of the settlor. * * *" 1 Scott, *Trusts*, 2d ed., § 56.5.

Clearly the provisions in the minutes and in the trust render the trust irrevocable without the consent of the corporation and the minority stockholders. In *Russell's Ex'rs* v. *Passmore*, 127 Va. 475, 497, 103 S. E. 652, we quoted with approval from 1 Perry on Trusts (6th ed.), sec. 104, as follows:

"A completed trust without reservation of power of revocation can only be revoked by consent of all the *cestuis*. If a voluntary trust for the benefit, wholly or partly, of some person or persons other than the grantor, is once perfectly created, and the relation of trustee and *cestui que trust* is once established, it will be enforced,

though the settlor * * has attempted to revoke it by making a second voluntary settlement of the same property, or otherwise, or if the estate, by some accident, afterwards becomes revested in the settlor. In all these cases the first perfectly created trust will be upheld, with all its consequences * *. A trust once created and accepted without reservation of power can only be revoked by the full consent of all parties in interest; if any of the parties are not in being, or are not *sui juris*, it cannot be revoked at all. * * *"

Had an attempt been made by Freed, through his reserved voting rights in the stock, to revoke or terminate the trust and reclaim the stock during his lifetime, the corporation or the minority stockholders could have prevented him from accomplishing that wrongful diversion and waste of corporate assets. *Liggett* v. *Roanoke Water Co.*, 126 Va. 22, 101 S. E. 55; 4 M. J., Corporations, §§ 122, 123; 13 Am. Jur., Corporations, § 423, *et seq.* So far as the record discloses, the irrevocability of the trust was recognized by Freed and the contractual obligations of both Freed and the corporation were complied with until his death, at which time the corporation, and through it, the minority stockholders, came into enjoyment of the estate that had been conveyed to the company.

It follows that the decree appealed from must be affirmed and the cause remanded for such further proceedings as may be appropriate.

*Affirmed and remanded.*