Samuel **MELTZER**, Appellant,

v.

**ATLANTIC RESEARCH CORPORA-
TION et al., Appellees.**

**No. 9201.**

United States Court of Appeals
Fourth Circuit.

Argued Jan. 23, 1964.

Decided April 9, 1964.

Sidney B. Silverman, New York City (Ewell G. Moore, Jr., and Rutherford Day, Washington, D. C., and Rosenfeld & Silverman, New York City, on brief), for appellant.

Armistead L. Boothe, Alexandria, Va. (James W. Crowley and Ira P. Barsky, Alexandria, Va., Louis Koutoulakos, Arlington, Va., John A. Beck, Charles S. Rhyne, Thomas P. Brown, III, Ganson Purcell, E. Ladd Thurston and Courts Oulahan, Washington, D. C., on brief), for appellees.

Before BRYAN and BELL, Circuit Judges, and MICHIE, District Judge.

ALBERT V. BRYAN, Circuit Judge.

This derivative suit by shareholder Samuel Meltzer against the Atlantic Re-search Corporation and its then five directors was dismissed by the District Court on the ground that the plaintiff had failed first to demand of the directors "such action as he desires" of the corporation—that is to sue for recovery of losses it suffered from the alleged misfeasance or nonfeasance of the directors. This exaction of the plaintiff was predicated on Rule 23(b), Fed.R. Civ.P. reading pertinently as follows:

> "The complaint [in a secondary action] shall also set forth with particularity the efforts of the plaintiff to secure from the managing directors or trustees and, if necessary, from the shareholders such action as he desires, and the reasons for his failure to obtain such action or the reasons for not making such effort."

Appealing, the shareowner contends that a demand would have been in vain and, indeed ineffectual if granted. We agree.

The complaint was filed on behalf of all the other shareholders. As the decision was passed on a motion to dismiss or for summary judgment, the allegations of the plaintiff are to be treated as admitted or as not genuinely in issue. So taken, they depict such misfeasance by two directors—Arch C. Scurlock and Arthur W. Sloan—and such nonfeasance by the other three as to demonstrate the emptiness of resort to them.

Scurlock and Sloan, according to the complaint, own 418,790 and 372,530 shares of Atlantic's common stock, that is 21% and 18%, respectively. It further averred that together with the other three defendant directors, Scurlock as director and president, and Sloan as vice-president and director, dominated Atlantic.

Plaintiff, a beneficial holder of stock since 1960, commenced the present action on November 13, 1962 and on January 3, 1963 filed an amendment, here treated as the complaint. He charges that on October 10, 1962 the Securities and Exchange Commission suspended the trading of Atlantic's stock on the American Stock Exchange because of the publica-

tion by Atlantic of false financial statements, including the failure to disclose certain unauthorized diversions of corporate moneys.

The misapplications were alleged as committed in 1962 and prior years. The first was the loan of $3,900,000 by Atlantic at the instance of Scurlock to "certain intermediaries". The censure is: that he had borrowed upon nearly all of his stock in Atlantic; that the market price of this stock began to decline sharply in June 1961; that as the price fell the value of the investment of the individual defendants decreased; and that in order to prevent further dwindling of their investments and to prevent shrinkage of Scurlock's security for his loans, with possible foreclosure by sale of his Atlantic shares, Scurlock and the other defendant directors determined to support the market price of Atlantic's shares. This was accomplished, the complaint declares, through the loans of $3,900,000, as the intermediaries were to use the proceeds to buy Atlantic shares on the market. This process was completed with the pledge of the newly purchased shares to Atlantic as security for the notes representing the $3,900,000.

In addition to citing Scurlock as using Atlantic's funds to defray his living, entertainment and personal traveling expenses, the complaint goes on to tax him and the other defendant directors with financing other companies in which Scurlock and Sloan were largely interested; and that these funds were used to acquire and improve land of these companies which in turn leased them to Atlantic on unfavorable terms. The complaint submits that all of these transactions were effected or brought about by Scurlock and Sloan and were participated in, or negligently tolerated by, the other defendant directors.

Injury to Atlantic is summarized in this way: that the false publication with resulting suspension by the S. E. C. of market trading in its shares gravely impaired the credit of Atlantic; that the security for the loans of $3,900,000 is substantially less in value than their face amounts; that the loans were illegal, as they were made by Atlantic to acquire its own stock; that this employment of these moneys—said to be 20% of its total assets—withdrew that sum from the intended aims of the corporation; and that these loans, as well as the appropriation of Atlantic's funds to the use of the other companies in which Scurlock and Sloan were interested, constituted "a waste and spoliation of Atlantic's assets".

None of the acts or apathy of the defendants as pleaded was denied. The defense is that the directors have taken all the rehabilitative measures which could be required of them by the corporation, and this action proves the wisdom of the prerequisite of a demand before suit. The only denial is the averment of the insecurity of the loans of $3,900,000.

■ In this background, demand of the directors that the corporation recapture these loans and appropriations, as well as recover damages suffered by the corporation, would have been utterly unavailing. The plaintiff points out that Scurlock and Sloan with the other defendant directors dominate the Board, for they were the Board. It was too much to expect that the Board would direct the corporation to sue themselves. Furthermore, such a suit as the plaintiff asks would be controlled by the Board and for this reason it is artless indeed, and faithless to the corporation, to leave the prosecution of it to the defendants therein. Cathedral Estates, Inc. v. Taft Realty Corp., 228 F.2d 85, 88 (2 Cir. 1955), 251 F.2d 340 (1957). This is demonstrated by the fact that they have already caused the corporation itself to join in the strenuous defensive moves in this suit. Cf. Liggett v. Roanoke Water Co., 126 Va. 22, 101 S.E. 55, 57 (1919).

■ The necessity and sufficiency of the preliminary demand upon the directors, and the circumstance which satisfies omission of such demand, under Rule 23(b) would seem to be procedural in nature and hence governed by Federal law. See Delaware & Hudson Co. v. Albany & Susquehanna R.R. Co., 213 U.

S. 435, 451, 29 S.Ct. 540, 53 L.Ed. 862 (1909); Quirke v. St. Louis-San Francisco R.R. Co., 277 F.2d 705 (8 Cir.), cert. denied, 363 U.S. 845, 80 S.Ct. 1615, 4 L.Ed.2d 1728 (1960); but see Steinberg v. Hardy, 90 F.Supp. 167 (D.Conn. 1950). In any event, Virginia decisional law appears to be in accord. In Liggett v. Roanoke Water Co., supra, 126 Va. 22, 101 S.E. 55, the Court declared:

"[U]nder the well-established and admitted doctrine * * * a stockholder may maintain such a suit for a wrongful diversion of the assets of a corporation if he alleges and proves that a request or demand has been made upon the board of directors, or other body managing the corporation, to institute proceedings against the wrongdoer, and that they have refused to do so after a reasonable request or demand, or upon the allegation and proof of such facts as shown that it is reasonably certain that a demand for corporate action would have been useless".

■ On the allegations of the complaint, the plaintiff is certainly also to be forgiven the omission of a request upon the stockholders to force restoration of Atlantic's losses. While the District Court did not reach that point, we see at once the futility of any such importunity upon the shareholders. With Scurlock and Sloan holding 40% of the voting stock, even without consideration of the stock holdings of their associates, it would be costly business in time and money for the smaller holders to compel the corporation to protect its rights. The stock is widely distributed, and the convening of a sufficient number of the remaining 60% for a discussion and vote would certainly not be readily feasible. Cf. Delaware & Hudson Co. v. Albany & Susquehanna R.R. Co., supra, 213 U.S. 435, 451, 29 S.Ct. 540, 53 L.Ed. 862.

In defense, as already noted, the directors maintain that demand upon them would have achieved all of the aims of the present plaintiff. For proof they refer to the redemptive action of the Board upon learning of S.E.C.'s accusation. But this was severely wanting in satisfaction. The first step of the Board was to authorize two additional directorships, 7 instead of 5. The two directors to be added were persons not already within the corporation. However, their selection was left to the very persons now sued. The immediate result was only remotely remedial. Next, the Board authorized the creation of an executive committee consisting of three members and removed Scurlock as president. But he was immediately elected Chairman of the Board. At once Sloan was made president and the "chief executive authority over the corporation" was placed in him. Thus the very persons of whom complaint was made were retained in top rank positions.

Apart from employing a law firm to act as general counsel for the corporation, procuring a reputable accounting firm, and circulating financial statements, the only other reconstructive action of the Board was to obtain guarantees from Scurlock and Sloan of the outstanding loans of $3,900,000. These notes were impliedly admitted to be of doubtful value by the new accountant's requirement that a reserve be set up against their loss. The damage done by the loans of $3,900,000 is not cured by the guarantee of Scurlock and Sloan. Such misdirection of company funds is cured by not less than the immediate return of the money to the corporation. The action of the Board ratifies the loans rather than repudiates them. In oral argument we are told that the guarantee of Scurlock is of little value because of encumbrances upon his assets.

■ Again, if the defendant directors other than Scurlock and Sloan did approve these loans or were derelict in discovering or recognizing and opposing them, the corporation undoubtedly has a claim against them for any resulting loss. O'Connor v. First Nat. Investors' Corporation, 163 Va. 908, 177 S.E. 852 (1935). All of this applies with equal force to

any channeling of corporate money into other companies.

Virginia decisional law acknowledges and upholds a cause of action on the facts alleged by the appellant. Liggett v. Roanoke Water Co., supra, 126 Va. 22, 101 S.E. 55. This right of a minority stockholder has long been elementary in the Federal courts too. Delaware & Hudson Co. v. Albany & Susquehanna R.R. Co., supra, 213 U.S. 435, 451, 29 S. Ct. 540, 53 L.Ed. 862. We do not intend to hold that the charges in the complaint are true. The only question before us is whether the facts well pleaded there excused the plaintiff from a prefatory demand upon the directors and stockholders. To repeat, we think they do.

The judgment of dismissal must be reversed, and the action remanded for trial.

Reversed and remanded.