**CLARK ENTERPRISES, INC., Plaintiff,**

v.

**HOLYWELL CORPORATION, et al., Defendants.**

Civ. A. No. 83–0031–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

March 24, 1983.

Howard V. Sinclair, Alexandria, Va., for plaintiff.

James A. Newell, Arlington, Va., for defendants.

## MEMORANDUM OPINION

RICHARD L. WILLIAMS, District Judge.

### I. Factual Background

Defendant Holywell Corporation is a Delaware corporation whose principal place of business is Virginia. Until March, 1978, defendant Theodore B. Gould, a Virginia resident, owned all 10,000 shares of Holywell Corporation stock. On March 15, 1978, Gould, Holywell and plaintiff, Clark Enterprises, Inc., a Maryland corporation whose principal place of business is Maryland, entered into an agreement pursuant to which Gould was issued an additional 70,000 Holywell shares and plaintiff acquired 20,000 Holywell shares.

On that same day, the parties entered into a "Buy-Sell Agreement", which provided that Holywell would purchase all of plaintiff's Holywell stock in the event of death or disability of A. James Clark (president of Clark Enterprises, Inc.), or of Gould (who is also Holywell's Chief Executive Officer and controlling director). The purchase price under the Buy-Sell Agreement was to be redetermined annually. In March, 1978, the price was set at $37.50 per share. The stockholders met again in August, 1980, and October, 1982, but they were unable to agree upon a price.

On July 2, 1981, the plaintiff made a formal stockholder's demand to inspect Ho-

lywell's books and records, under Section 220 of the General Corporation Law of Delaware. *See* 8 Del.C. § 220. After the Board refused plaintiff's requests, plaintiff filed an action against Holywell in the New Castle County, Delaware, Court of Chancery, styled as *Clark Enterprises, Inc. v. Holywell Corp.,* C.A. No. 6554. On December 21, 1981, after trial, the Vice Chancellor ordered Holywell to afford plaintiff access to the corporate books.

Plaintiff contends that during summer and fall of 1982, it was given limited access to some corporate records. Plaintiff contends that, although many records are missing, its inspection of Holywell records revealed that Gould abused his position of control over Holywell.

On December 8, 1982, plaintiff, through counsel, wrote the Board of Directors of Holywell requesting that the Board initiate action against Gould for breach of his fiduciary duty to Holywell. On December 17, 1982, the Board of Directors responded, through counsel, that it would appoint a "special litigation committee" to conduct an investigation to determine whether the proposed litigation would be in the best interests of the corporation. Plaintiff was not satisfied with the Board of Directors' response, and on January 12, 1983, plaintiff filed this action.

Plaintiff's suit alleges that Gould has improperly treated the Corporate assets as his own; that he has misappropriated and wasted corporate funds; that he has usurped and stolen corporate opportunities; that he has caused the Corporation to engage in activities with no valid business purpose; and that he has disregarded the corporate form. Plaintiff sues both individually and derivatively, for the benefit of Holywell, and seeks an accounting, injunctive relief, and appointment of a receiver, dissolution of the corporation, and distribution of assets.

The Board of Directors has meanwhile continued to make efforts to appoint a special litigation committee. By affidavit, defendant Gould offers the names of the two individuals that are to be appointed to the

committee: Marvin Rosen, a Miami, Florida attorney; and Van Kussrow, a Miami, Florida, real estate broker. Gould's affidavit further states that neither of these individuals has represented Gould or any entity in which Gould has an interest. Gould states that Holywell's board has four seats, two of which are presently vacant (Gould and Charles Osbourne, a Holywell employee, fill the two occupied seats); Kussrow and Rosen are to fill the vacancies for the limited purpose of evaluating the proposed litigation.

Plaintiff offers, by counter-affidavit, factual asseverations which contradict Gould's contentions that the proposed board members are independent. Plaintiff's counter-affidavit states that plaintiff's counsel spoke by telephone with Kussrow. Kussrow told plaintiff's counsel that he (Kussrow) was personally involved in some of the events at issue in this lawsuit, and that he considers Gould a "client".

Defendants now move this court for dismissal of plaintiff's action, under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendants contend that plaintiff has failed to comply with Rule 23.1's requirements that individual stockholders seeking to bring stockholders derivative actions must first make demand upon the corporation's Board of Directors that the Corporation itself take up the action the stockholders seek. For reasons stated below, defendants' motion is denied.

## II. Legal Analysis

Rule 23.1 of the Federal Rules of Civil Procedure regulates the procedural requirements of stockholders' derivative actions. Among other things, Rule 23.1 requires that the stockholders' complaint "allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for his failure to obtain the action or for not making the effort." The United States Supreme Court has stated that the demand requirement "recognizes the right of the corporate directory to corporate control; in other words, to make the corporation paramount, even when its rights are to be protected or sought through litigation." *Delaware Hudson Co. v. Albany and Susquehana R.R. Co.,* 213 U.S. 435, 447, 29 S.Ct. 540, 543, 53 L.Ed. 862 (1909). *See also United Copper Securities Co. v. Amalgamated Copper Co.,* 244 U.S. 261, 262, 37 S.Ct. 509, 510, 61 L.Ed. 1119 (1914); *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949).

■ Rule 23.1's requirements embody several principles such as "the importance of allowing corporations to govern themselves to the extent possible, avoiding unnecessary judicial involvement in the internal affairs of business organizations, and discouraging harassing strike suits...". 7A Wright & Miller, *Federal Practice and Procedure,* § 1831 at 382 (1972 and Supp. 1983). Rule 23.1's demand requirement applies to derivative actions brought in federal courts where jurisdiction is based on diversity of citizenship. *Meltzer v. Atlantic Research Corp.,* 330 F.2d 946 (4th Cir.1964), cert. denied 379 U.S. 841, 85 S.Ct. 78, 13 L.Ed.2d 47 (1964). *See also* 10 Fed.Proc.L. Ed., *Derivative Actions By Shareholders,* § 25:13 (1982).

The defendants' motion to dismiss is based on the contention that the plaintiff has failed to comply with Rule 23.1's demand requirements. Defendants contend that, although plaintiff made such a demand, he failed to allow the directors sufficient opportunity to exercise their business judgment in determining whether the present litigation is in the best interests of the corporation. Defendants contend that until the soon-to-be-appointed special litigation committee has acted, the present action cannot continue. Defendants contend that the present action would only be appropriate if the demand for litigation is granted, or if the demand is wrongfully refused.

The plaintiff's reply to defendants' contentions is that, under the facts alleged in the complaint, the demand it would ordinarily be required to make is, in this instance, excused. Plaintiff contends that, even though it has actually made a demand to

**1310**

which reply has as yet not been made, the facts alleged in the complaint show that waiting for any response to the demand would be a futility. Therefore, plaintiff argues it should not be compelled to complete what would be a purely ritualistic act.[1]

▮ Under the demand requirement, which assumes that directors and not stockholders ordinarily conduct the affairs of the company, the stockholder seeking to conduct litigation on the corporation's behalf "without first affording the directors the opportunity to occupy their normal status ... must show that his case is exceptional. His initial burden is to demonstrate why the directors are incapable of doing their duty..." *In re Kauffman Mutual Fund Actions,* 479 F.2d 257, 263 (1st Cir.), *cert. denied* 414 U.S. 857, 94 S.Ct. 161, 38 L.Ed.2d 107 (1973). Determination of whether plaintiff has carried its burden is within the sound discretion of the trial court. *See de Haas v. Empire Petroleum Company,* 435 F.2d 1223 (10th Cir.1970); *Walden v. Elrod,* 72 F.R.D. 5 (W.D.Okl.1976); *Jannes v. Microwave Communications, Inc.,* 57 F.R.D. 18 (N.D.Ill.1972). *See also* 7A Wright & Miller, *Federal Practice & Procedure,* § 1831 at 382 (1972 & Supp.1983).

▮ The allegations contained in plaintiff's complaint portray the controlling director as having engaged in a pattern of wrongdoing. Plaintiff alleges that defendant Gould caused the corporation to make improper loans or advances, interest-free and without security, for his personal investments, which investments belonged to the corporation (*See* Plaintiff's Verified Complaint, ¶¶ 20–25); that he caused the corporation to fix for himself improper and excessive compensation (*See id.,* ¶¶ 26–28); and that he usurped corporate opportunities, and improperly treated corporate assets as his own (*See id.,* ¶¶ 29–53). In addition, defendant Gould has historically proven obstructive to plaintiff's efforts to inspect the corporation's books and records, forcing plaintiff to resort to judicial compulsion to enforce plaintiff's right to examine the books.

The court holds that the facts alleged suffice to excuse the demand requirements under Rule 23.1. Demand is almost always excused in derivative suits alleging that the directors have engaged in wilful or negligent breach of their fiduciary duties. See *Walden v. Elrod, supra; Jannes v. Microwave Communications, Inc., supra.* Demand is likewise excused where the board of directors is subject to the control of the alleged wrongdoers. *See Untermeyer v. Fidelity Daily Income Trust,* 580 F.2d 22, 23 (1st Cir.1978); *Liboff v. Wolfson,* 437 F.2d 121 (5th Cir.1971); *Cathedral Estates v. Taft Realty Corp.,* 228 F.2d 85, 88 (2nd Cir.1953).[2] Some courts have also considered it significant that the directors had denied plaintiff access to the corporate books. *See Pioche Mines Consolidated, Inc. v. Dolman,* 333 F.2d 257 (9th Cir.1964), *cert. denied* 380 U.S. 956, 85 S.Ct. 1082, 13 L.Ed.2d 972.

In *Lewis v. Curtis,* 671 F.2d 779, 785 (3rd Cir.1982), *cert. denied* —— U.S. ——, 103 S.Ct. 176, 74 L.Ed.2d 144, Chief Judge Seitz wrote, in an opinion applying Delaware

1. Plaintiff also contends that the suit should not be dismissed because the suit is brought individually as well as derivatively, and that no demand is required for suits brought solely on an individual stockholder's behalf. Counsel for the defendants argued persuasively at oral hearing on this motion that plaintiff has no individual cause of action, and that his suit can proceed only derivatively, if at all. However, the court does not at this point rule whether or not plaintiff has an individual cause of action. The court's ruling is narrower; it addresses only the question whether plaintiff is excused from Rule 23.1's demand requirements if this case presents, as defendants contend, solely a derivative action.

2. Some courts have held that mere conclusory allegations of director wrongdoing are not sufficient to excuse demand. *See, e.g., Greenspun v. Del E. Webb Corp.,* 634 F.2d 1204, 1209–10 (9th Cir.1980); *Heit v. Baird,* 567 F.2d 1157, 1162 (1st Cir.1977). But courts agree that upon sufficient allegations of self-interest or bias, demand upon directors engaged in the wrongdoing is excused. *See Lewis v. Curtis,* 671 F.2d 779 (3rd Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 176, 74 U.S. 144 (1982).

law,[3] that "demand on the board should not be required ... where the allegations of the complaint permit the inference by the court that the directors upon whom demand would be made lack the requisite disinterestedness to determine fairly whether the corporate claim should be pursued". This complaint, like that in *Lewis*, alleges that not only that the controlling directors participated in and approved the challenged activity, but that the challenged activity is a self-interested activity. This court concludes, as did Chief Judge Seitz in *Lewis*, that under the circumstances alleged in the complaint, "any demand must be presumed futile." *Id.* at 785.[4]

■ Defendants attempt to argue that this court should take into account the actual demand plaintiff has already made. Defendants cite numerous recent opinions for the proposition that shareholder derivative suits should be dismissed if initiated prior to conclusion of on-going attempts for intercorporate remedies. *See, e.g., Weiss v. Temporary Investment Fund*, 520 F.Supp. 1098 (D.C.Del.1981); *Mills v. Esmark, Inc.*, 91 F.R.D. 70 (N.D.Ill.1981). The court finds such cases inapposite. Those cases consider only what must be done before suit may be brought in a demand-required case. In de-

termining the preliminary issue whether demand is required it is irrelevant that there may have been an actual demand at some point prior to the filing of the complaint. The analysis whether demand is excused involves "solely" an examination of the complaint. *See Lewis v. Curtis*, 671 F.2d 779 (3rd Cir.1982), *cert. denied* — U.S. ——, 103 S.Ct. 176, 74 L.Ed.2d 144; *In re Kauffman Mutual Fund Action, supra* at 263 n. 4. And upon examination of plaintiff's complaint, the court concludes that demand is excused under the circumstances of this case.

■ The presence of the actual demand in this case is not absolutely insignificant; to a certain extent, it aids this court in reaching its determination that requiring this plaintiff to complete the Rule 23.1's demand requirements would be an exercise in futility. The actual demand made prior to the filing of the complaint allows this court to see what would happen next if demand were required. The board's decision to appoint a "special litigation committee" can only be viewed narrowly. As the Second Circuit recently observed in *Joy v. North*, 692 F.2d 880 [Current] Fed.Sec.L. Rep. (CCH) ¶ 98, 860 (2nd Cir.1982),

3. Some case law, including the only Fourth Circuit decision addressing the demand excused issue, states that federal law governs the issue whether plaintiff has carried his burden of demonstrating such circumstances as satisfies omission of demand. *See Meltzer v. Atlantic Research Corporation*, 330 F.2d 946 (4th Cir.1964), *cert. denied* 379 U.S. 841, 85 S.Ct. 78, 13 L.Ed.2d 47 (1964); *Walden v. Elrod*, 72 F.R.D. 5, 13 (W.D.Okl.1976); *Belcher v. Birmingham Trust National Bank*, 348 F.Supp. 61, 142 (N.D.Ala.1968). *See also* 10 Fed.Proc.L. Ed., *Derivative Actions By Shareholders*, § 25:13 (1982). But subsequent decisions have shown that, for all practical purposes, there may be no difference between the federal law to be applied and the relevant state law. *See, e.g., Burks v. Lasker*, 441 U.S. 471, 99 S.Ct. 1831, 60 L.Ed.2d 404 (1979), which held that federal courts must apply state law in determining the authority of a committee of independent directors to discontinue derivative suits in cases arising under federal law. The Third Circuit, in *Lewis v. Curtis*, interpreted *Burks* as requiring a federal court, hearing a diversity jurisdiction stockholder's derivative suit, to look to *state law* in determining wheth-

er demand is excused. Thus, recent case law may be reconciled with the earlier cases holding that federal law controls the determination whether demand is excused: federal law looks to relevant state law. *Meltzer* is not to the contrary, since it looked to state law for corroboration of its decision on the merits of the demand excused issue.

4. Even where demand is excusable, "circumstances may arise where continuation of the litigation would not be in the corporation's best interests." *Zapata Corp. v. Maldonado*, 430 A.2d 779 (Del.1981). As the Ninth Circuit observed, "to allow one shareholder to incapacitate an entire board of directors merely by levelling charges against them gives too much leverage to dissident shareholders." *Lewis v. Anderson*, 615 F.2d 778, 783 (9th Cir.1979), *cert. denied* 449 U.S. 869, 101 S.Ct. 206, 66 L.Ed.2d 89 (1980). Such risks would be greater in cases involving publicly-traded corporations with numerous shareholders. The court specifically finds that such risks are not present in this case.

as a practical matter, new board members are selected by incumbents. The reality is, therefore, that special litigation committees are appointed by the defendants to that litigation. It is not cynical to expect that such committees will tend to view derivative actions against the other directors with skepticism. Indeed if the involved directors expected any result other than a recommendation of termination at least as to them, they would probably never establish that committee.

The affidavits plaintiff presents state that at least one of the proposed directors has had extensive dealings with defendant Gould, including dealings involving matters in dispute in this case. Under the circumstances, the view that the special litigation committee could hardly be expected to "protect the interests of the minority stockholders and to assure a vigorous prosecution of effective litigation against the offending majority". *See Cohen v. Industrial Finance Corp.* 44 F.Supp. 491, 494 (D.C.N.Y.1944).

It is true that the use of special litigation committees is established practice in appropriate cases. *See, e.g., Zapata Corp. v. Maldonado,* 430 A.2d 779 (Del.1981). But if demand were required in this case, the court would sooner or later have to face the issue whether this plaintiff should be permitted to proceed with this lawsuit despite the directors' opposition.[5] The court finds that to require plaintiff to make demand in this case would simply delay the suit and remedy. To impose the bar of the demand requirement "would largely be to create a pleading defense to a factual dispute." *Lewis v. Curtis, supra,* at 786.

Accordingly, defendants' motion to dismiss is denied.

---

**5.** See *Zapata Corp. v. Maldonado,* 430 A.2d 779, 789 (Del.1981), where the court held that even after a specially appointed litigation board has refused demanded litigation, the court must apply "its own independent business judgment", as to whether the case should be dismissed. That court observed that "[u]nder our system of law, courts and not litigants should decide the merits of litigation." *Id.* at n. 18. *Accord Joy v. North,* 692 F.2d 880 [Current] Fed.Sec.L.Rep. (CCH) ¶ 98,860 (2nd Cir.1982).