332 A.2d 443

GIRARD BANK and Edward Feilke, Co-executors of the Estate of Anna Reid, Appellants,

v.

Harry C. HALEY et al.

Supreme Court of Pennsylvania.

Argued Jan. 14, 1974.

Decided Jan. 27, 1975.

238

Raymond Jenkins, Ambler, for appellants.

Jack A. Rounick, Pechner, Sacks, Dorfman, Rosen & Richardson, Norristown, for appellees.

Before EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

POMEROY, Justice.

This suit in equity was brought by appellants' decedent, Anna Reid, who averred in her complaint that she had dissolved a partnership between herself and the defendants, and prayed that the business of the firm be wound-up and its assets distributed. During the course of the proceedings Mrs. Reid died and the executors of her estate were substituted as parties plaintiff. The

principal question for decision is whether the partnership was dissolved during Mrs. Reid's lifetime, as she averred and her personal representatives urge, or upon her death, as the trial court found.

The following facts are not in dispute. On September 28, 1958, Mrs. Reid and the three defendants, appellees here, entered into a written partnership agreement for the purpose of leasing for profit certain real property located in Montgomery County, Pennsylvania. Mrs. Reid was to manage the property, and the defendants were to perform the physical labor necessary to maintain the premises in good condition. The initial partnership assets consisted of real estate valued at $50,000 and $10,000 in cash, both contributed by Mrs. Reid, and an additional sum of $10,000 in cash contributed in equal shares by the three other partners. By letter addressed to her partners, the defendants, Mrs. Reid notified them that she was dissolving the partnership and requested that the partnership assets be liquidated as soon as possible.[1] Meetings between the partners following receipt of this letter failed to produce agreement for a plan for liquidation or as to the respective rights of the parties in the assets of the partnership. This suit praying for a winding up of the affairs of the partnership and a liquidation of its assets was then brought.

1. The letter was undated, but the record establishes that it was sent on February 10, 1971. The text of the letter was as follows:
   "Gentlemen:
   I hereby notify you that I am terminating the partnership which the four of us entered into on the 28th day of September 1958, and request that steps be taken to liquidate the assets of the Partnership as soon as possible. I hereby authorize you to deal with my attorney, J. William Wetter, Jr., in the matter of negotiating the steps necessary to bring this matter to a speedy and satisfactory conclusion.
   "I trust that our friendship will continue and that you will recognize that terminating this partnership has been necessitated by my need to clarify the status of my various assets at this particular time.
                                        Very truly yours,
                                        Anna Reid"

The chancellor found that the partnership had been dissolved, not by Mrs. Reid's letter, but rather by her death, and concluded that the defendants, as surviving partners, were entitled to exercise their option under the partnership agreement to purchase the interest of the deceased partner.[2] Having determined that the defendants had in fact exercised their option to purchase Mrs. Reid's interest, the chancellor entered a decree nisi ordering the defendants to pay the estate in discharge of the purchase price the sum of $29,165.48 [3] plus seventy per cent of the

2. The pertinent provisions of the partnership agreement are as follows:

"11. Upon the death of any partner, the surviving partners or any of them shall have the right to purchase the interest of the decedent in the partnership. If the surviving partners or any of them elect to purchase the interest of the decedent, they or he or she shall serve notice in writing of such election within three months after the death of the decedent, upon the executor or administrator of the decedent, or, if at the time of such election no legal representative shall have been appointed, then upon any one of the known legal heirs of the decedent at the last known address of such heir.

"12. If the surviving partners or any of them elect to purchase the interest of the decedent in the partnership, the purchase price shall be equal to the decedent's capital account on the date of his death adjusted as herein provided. The decedent's capital account on the date of his or her death shall be increased by his or her share of partnership profits, for the period from the beginning of the year in which his death occurred until the date of his death. Losses shall be treated conversely in the same manner. The real estate shall be taken at a value equivalent to the assessed value fixed by the local authorities for real estate tax purposes for the year in which such death occurs, and the decedent's capital account shall be adjusted to reflect this valuation. As thus adjusted the decedent's capital account shall be taken as shown on the books of the partnership, without any allowance for good will, trade name, or other intangible assets. In the event of the death of Anna Reid, her interest, subject to the limitations and conditions aforementioned shall be liquidated over a period of ten years following her death."

3. This sum represents the chancellor's determination of the decedent's capital account, pursuant to paragraph 12 of the partnership agreement, *supra*, note 2. Although it is not entirely clear from the record, the figure apparently reflects a division of ownership of 70% in Mrs. Reid and 10% in each of the defendant partners, as indicated on the federal returns of income (I.R.S.

income of the partnership for the calendar year 1971. Exceptions filed by the executors to the adjudication were dismissed and the decree nisi was adopted as the final decree. This appeal followed.[4]

■■■ None of the parties disputes the chancellor's conclusion that the partnership has been dissolved; the dispute, as indicated at the outset, is when that event occurred. Dissolution of a partnership is statutorily defined as "the change in the relation of the partners caused by any partner ceasing to be associated in the carrying on, as distinguished from the winding up, of the business." Uniform Partnership Act § 29 ("the Act").[5] There is no doubt that dissolution of a partnership will be caused by the death of any partner, § 31(4) of the Act, 59 P.S. § 93 (1964), and if Mrs. Reid's death was the cause of the dissolution here involved, the chancellor was quite correct in looking to the provisions of paragraphs 11 and 12 of the agreement, note 2, *supra,* as defining the rights and obligations of the surviving partners on the one hand and the estate of the deceased partner on the other. If, however, dissolution occurred during the lifetime of Mrs. Reid, those portions of the agreement, which are concerned solely with the effect of the death of a partner, are not germane. The agreement being otherwise silent as to winding up and liquidation, the provisions of the Act will control.

■■ The chancellor was impressed with the fact that the decedent "was a strong willed person" who dom-

Form 1065) filed by the partnership for the years 1962 through 1970. The partnership return of income for 1971, filed after Mrs. Reid's death, indicated that each partner owned 25% of the partnership. In light of our disposition of the case it is not necessary for us to pass upon the correctness of the chancellor's calculations.

4. Act of July 31, 1970, P.L. 673 No. 233, art. II, § 202(4), 17 P.S. § 211.202(4) (Supp.1974).

5. Act of March 26, 1915, P.L. 18, part VI, § 29, 59 P.S. § 91 (1964).

inated the partnership enterprise (Adjudication, R. 421a), that the defendant partners had each contributed many thousands of hours of hard work and planning to the "joint venture", and that neither Mrs. Reid (who testified at the first hearing, but who then, according to the adjudication, "appeared confused and feeble") nor her personal representatives had offered "evidence to justify a termination." (Opinion, R. 437a). In supposing that justification was necessary the learned court below fell into error. Dissolution of a partnership is caused, under § 31 of the Act, 59 P.S. § 93 (1964), "by the express will of any partner." The expression of that will need not be supported by any justification. If no "definite term or particular undertaking [is] specified in the partnership agreement", such an at-will dissolution does not violate the agreement between the partners; indeed, an expression of a will to dissolve is effective as a dissolution even if in contravention of the agreement. Ibid.[6] We have recognized the generality of a dissolution at will. *See Lacey v. Rutter*, 358 Pa. 502, 57 A.2d 679 (1948); 60 Am. Jur.2d Partnership § 175 (1972). If the dissolution results in breach of contract, the aggrieved partners may recover damages for the breach and, if they meet certain conditions, may continue the firm business for the duration of the agreed term or until the particular undertaking is completed. *See* § 38 of the Act, 59 P.S. § 100 (1964).

---

**6.** The Official Comment by the Commissioners on Uniform State Laws to Section 31 of the Act states the rationale for this rule as follows:

"The relation of partners is one of agency. The agency is such a personal one that equity cannot enforce it even where the agreement provides that the partnership shall continue for a definite time. The power of any partner to terminate the relation, even though in doing so he breaks a contract, should, it is submitted, be recognized."

"The rights of the parties upon a dissolution in contravention of the agreement are safeguarded by section 38(2), *infra*." 6 Uniform Laws Annotated 377 (1969).

■ There is no doubt in our minds that Mrs. Reid's letter, *see* note 1, *supra,* effectively dissolved the partnership between her and her three partners. It was definite and unequivocal: "I am terminating the partnership which the four of us entered into on the 28th day of September, 1958." The effective termination date is therefore February 10, 1971, and Mrs. Reid's subsequent death after this litigation was in progress is an irrelevant factor in determining the rights of the parties.

■ The remaining question is whether or not the unilateral dissolution made by Mrs. Reid violated the partnership agreement.[7] The agreement contains no provision fixing a definite term, and the sole "undertaking" to which it refers is that of maintaining and leasing real property.[8] This statement is merely one of general purpose, however, and cannot be said to set forth a "particular undertaking" within the meaning of that phrase as it is used in the Act. A "particular undertaking" under the statute must be capable of accomplishment at some time, although the exact time may be unknown and unascertainable at the date of the agreement. Leasing property, like many other trades or businesses, involves entering into a business relationship which may continue indefinitely; there is nothing "particular" about it.[9] We

7. The chancellor, not having found that Mrs. Reid effected a dissolution in her lifetime, had no occasion to consider this issue. The issue was, however, framed by the pleadings and is briefed on this appeal. Since its resolution depends altogether on what the written agreement provides, it is appropriate to dispose of the question at this time.

8. The pertinent language is contained in paragraph 1. of the agreement: "This agreement . . . has for its object the operation, management, cultivation, maintenance, leasing for profit a tract of land with the buildings and improvements thereon erected . . . ."

9. In contrast, a partnership formed for the purpose of developing and selling a particular tract of land would be one for a particular undertaking, and hence not rightfully terminable at will until the purpose was accomplished. *See Aiman v. Aiman,* 61 Montg. Co.L.R. 51, 55 (1944).

thus conclude, on the record before us, that the dissolution of the partnership was not in contravention of the agreement.

▮ In light of our conclusion that an inter-vivos dissolution took place, the provisions of the Act rather than the post-mortem provisions of the agreement, will govern the winding-up of the partnership affairs and the distribution of its assets.[10] Because compliance with the Act requires findings and conclusions which were not made by the chancellor in view of his disposition of the case,[11] we must remand for further proceedings.

Decree vacated; case remanded for further proceedings consistent with this opinion. Each party to pay own costs.

JONES, C. J., did not participate in the consideration or decision of this case.

10. *See* in general §§ 33–43 of the Act, 59 P.S. § 95–105 for the rules governing winding-up and the distribution of assets; *see also* § 18 of the Act, 59 P.S. § 51 (1964), for certain rules determining the rights and duties of partners in relation to the partnership.

11. The record contains no findings, for example, as to what, if any, amounts are owed by the partnership to creditors other than partners or to the partners for other than capital and profits. *See* § 40 of the Act, 59 P.S. § 102 (1964).