**Patricia JORDON, Plaintiff,**

v.

**BOWMAN APPLE PRODUCTS CO., INC., et al., Defendants.**

**Civ. A. No. 89–0021–C.**

United States District Court,
W.D. Virginia,
Charlottesville Division.

Jan. 10, 1990.

Stephen A. Northup, Donald R. Lee, Mays & Valentine, Richmond, Va., for plaintiff.

Ronald M. Ayers, John D. Eure, Johnson, Ayers & Matthers, Roanoke, Va., for Bowman Apple Products Co.

William B. Poff, Winston W. Burkes, III, Woods, Rogers & Hazelgrove, Roanoke, Va., for G. Bowman II, M. Bowman and P. Zirkle.

## MEMORANDUM OPINION

MICHAEL, Judge.

Plaintiff in this action is one of four shareholders in the defendant Bowman Apple Products Co., Inc., a closely held corporation. The five count complaint alleges that the defendant, Gordon D. Bowman, II, has improperly conducted the affairs of the corporation so as to "squeeze out" the plaintiff and obtain her interest in the corporation for less than it is worth. The court has jurisdiction pursuant to 28 U.S.C. § 1332. Currently before the court are defendants' joint motion to dismiss as to all counts, and defendants' joint motion to transfer this case to the Harrisonburg Divi-

sion. The issues have been briefed and both parties were heard at oral argument on November 20, 1989. These motions are now ripe for disposition.

Before addressing the merits of the defendants' motions it is necessary to review precisely what the Federal Rules of Civil Procedure require of a court faced with a 12(b)(6) motion. The present defendants, like many others, attempt to turn the motion to dismiss into a "mini" summary judgment motion by arguing the nature of the facts, the weight of the facts, or the inferences to be drawn from the facts, such as they are. These arguments are inappropriate at the 12(b)(6) stage.

"The function of a motion to dismiss ... is to test the law of the claim and not the facts which support the claim." *Spell v. McDaniel,* 591 F.Supp. 1090, 1099 n. 1 (E.D.N.C.1984). *See also Peck v. Hoff,* 660 F.2d 371, 374 (8th Cir.1981). Under the Federal Rules the operative philosophy is claim pleading, not fact pleading. Thus the question before a court at this stage is not whether plaintiff has alleged facts which would entitle her to prevail, or whether plaintiff has alleged any facts at all beyond those few required by Rule 8, but whether plaintiff's claims for relief are legally cognizable. This was made clear by the Supreme Court's decision in *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957):

> [A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that plaintiff *can* prove *no* set of facts in support of his claim which would entitle him to relief.

*Id.* at 45–46, 78 S.Ct. at 101–102 (emphasis added). The *Conley* test is prospective, not retrospective; it looks to what a plaintiff can show, not what she has shown.

With this framework in mind it is clear that where present defendants do no more than contest what the facts are, or whether the facts support plaintiff's theory of liability, their motions must be denied, in the first case because at this juncture the plaintiff's allegations must be taken as true, and in the second case due to the nature of Rule 12(b)(6). Where defendants'

motions do raise an issue as to the legal viability of a particular theory of relief, this court must conduct a more detailed analysis.

## I

In light of the foregoing, a lengthy description of the facts as they currently stand is unnecessary; nonetheless, a minimal background may bring the underlying issues more sharply into focus. On a motion to dismiss the plaintiff's factual allegations must be taken as true; the following recitation is therefore based largely on the plaintiff's pleadings.

Bowman Apple Products Co., Inc. ("BAP" or the "Corporation"), is a family-owned and operated processor of apples and apple products located in Mount Jackson, Virginia. BAP was founded by the plaintiff's father, Gordon D. Bowman, who was president of the Corporation until shortly before his death in 1976. Mt. Clifton Fruit Company ("Mt. Clifton"), is a related family partnership which operates an apple orchard. Mt. Clifton was originally founded by plaintiff's father and mother, Martha Bowman.

Gordon and Martha Bowman had three children: Gordon Bowman, II ("Sonny"), Patricia Jordon and Peggy Zirkle. At various times the children were all given interests in both BAP and Mt. Clifton. There are presently 8,650 shares of stock outstanding in BAP, owned as follows:

| Owner | Number of Shares | Percentage Ownership |
|---|---|---|
| Martha E. Bowman | 2,061 | 24% |
| Sonny Bowman | 1,418 | 16.4% |
| Peggy B. Zirkle | 1,396 | 16% |
| Patricia B. Jordon | 1,396 | 16% |
| Sonny Bowman Trust | 793 | 9.2% |
| Peggy B. Zirkle Trust | 793 | 9.2% |
| Patricia B. Jordon Trust | 793 | 9.2% |

The partnership interests in Mt. Clifton are as follows:

| Partner | Percentage Ownership |
|---|---|
| Martha E. Bowman | 34% |
| Sonny Bowman | 22% |
| Peggy Zirkle | 22% |
| Patricia B. Jordon | 22% |

Since the elder Bowman's death, Sonny has controlled the operations of both BAP and Mt. Clifton. Before his death Gordon Bowman caused Sonny to be elected president of BAP and Jordon and Zirkle to be elected to the Board of Directors (the "Board"). Shortly after their father's death Sonny asked Jordon and Zirkle to leave the Board, which they did.

Briefly stated, the dispute currently before the court focuses on several recent attempts by the Corporation and its president, Sonny Bowman, to acquire the plaintiff's interests in BAP and Mt. Clifton. The plaintiff alleges that the Corporation has paid artificially low dividends in order to reduce the value of her share to the plaintiff, and that BAP and Mt. Clifton have conducted their business in such a way as to insulate the value of their assets from the plaintiff. Plaintiff alleges that after having engaged in these activities Sonny and the Corporation [1] have attempted to purchase her shares at an artificially low price, and failing that, have attempted to create an additional class of stock which would render hers valueless. To the extent that more details are required they will be provided below.

## II

### A. *Motion to Dismiss*

#### 1. Count I.

Count I is a shareholder's derivative suit. Plaintiff seeks an award to BAP of all assets allegedly misapplied by Sonny and a similar award of all profits accruing to Sonny and his family as a result of their participation in the Wunder Orchards ("Wunder") and Virginia Craftsmen Furniture Company ("Craftsmen") partnerships.[2] Plaintiff also seeks her costs and attorneys' fees under this Count. Defendants move to dismiss on two grounds. They argue that plaintiff has failed to comply with the requirements of Fed.R.Civ.P. 23.1 in that (1) she does not "fairly and adequately represent the interests of the shareholders or members similarly situated," and (2) that plaintiff has failed to make the required demand upon the Board or allege sufficient facts showing that such an effort would be futile. Plaintiff argues that she is a legitimate "class of one" and that a request to the Board would have been futile in this case. Since Rule 23.1 mandates dismissal unless its requirements are met, the defendants' arguments are appropriate for consideration under 12(b)(6).

■ Rule 23.1 requires that a plaintiff represent only those others "similarly situated," not any specific group such as all minority shareholders. Whether a plaintiff has complied with the adequate representation requirement of Rule 23.1 is a matter addressed to the trial court's sound discretion. *Owen v. Modern Diversified Indus., Inc.*, 643 F.2d 441, 443 (6th Cir.1981); *Hornreich v. Plant Indus., Inc.*, 535 F.2d 550, 552 (9th Cir.1976). Rule 23.1 places no minimum numerical limits on the number of shareholders who must be "similarly situated." *See Schupack v. Covelli*, 512 F.Supp. 1310, 1312 (W.D.Pa.1981). In appropriate circumstances a single shareholder may be situated in a unique position and thus constitute a legitimate "class of one." *Halsted Video, Inc. v. Guttillo*, 115 F.R.D. 177, 180 (N.D.Ill.1987). *Contra Kuzmickey v. Dunmore Corp.*, 420 F.Supp. 226, 230–31 (E.D.Pa.1976).[3]

■ Plaintiff alleges that she is the only shareholder similarly situated and thus con-

---

**1.** Without doing away with the fiction of corporate existence, Sonny and the Corporation are, for the most part, one and the same. Defendants do not dispute that Sonny has day to day control over the Corporation, and the other defendant shareholders, Martha Bowman and Peggy Zirkle, have executed a voting trust which gives Sonny *de facto* control over the Corporation. Letters sent conveying various purchase offers to the plaintiff, which are included in the appendix to the Complaint, make it abundantly clear that the offers originated from, and were controlled by, Sonny, and not the Board or the Corporation.

**2.** Wunder and Craftsmen are two partnerships which plaintiff alleges BAP or Sonny have improperly participated in.

**3.** However, *see Halsted Video's* distinction of the *Kuzmickey* case. *Halsted Video*, 115 F.R.D. at 180.

stitutes a class of one. Defendants argue that defendant Zirkle and plaintiff are identically situated—they have the same ownership interests in BAP, the same nonmanagement status, and the same familial relationship to the defendants Martha and Sonny Bowman. Since Zirkle has been named as a defendant and has joined in the motion to dismiss, defendants argue, Jordon clearly cannot represent the interests of the entire class of those "similarly situated."

Rule 23.1 does not enumerate the factors which a court is to consider in determining similarity of situation; while relevance obviously places some limits on the items to be considered, the court's discretion is broad. Clearly important in a case such as this, where mismanagement and oppression are alleged, is the existence of any stock voting arrangement which alters the power structure of the corporation from that which appears on the face of a list of percentage ownership. While Zirkle and Jordon own identical interests in BAP, Zirkle's shares were incorporated into a voting trust agreement ("VTA") executed on February 7, 1989, which gave voting control of her stock, along with that of Martha Bowman, to Sonny. Plaintiff did not enter into the VTA. The court finds that, in light of the VTA, which Zirkle entered into and Jordon did not, defendant Zirkle and plaintiff Jordon are not similarly situated for the purposes of Rule 23.1. Since defendants apparently concede that the other shareholders are not similarly situated vis-a-vis plaintiff, the court concludes that the plaintiff constitutes a legitimate class of one and adequately and fairly represents those shareholders similarly situated. The remaining question under the motion to dismiss Count I, is whether demand on the board is excused.

■ As with the previous issue, the determination of whether the plaintiff has carried her burden of showing that demand on the board should be excused rests in the sound discretion of the court. *Smith v. Gordon,* 668 F.Supp. 520, 522 (E.D.Va.

1987); *Clark Enterprises, Inc. v. Holywell Corp.,* 559 F.Supp. 1307, 1310 (E.D.Va. 1983). Debate continues to flourish on a number of issues related to the demand question, including whether state or federal law applies and what quantum of proof is required. *See Smith,* 668 F.Supp. at 522–23. The decisions of various courts fall across a wide spectrum ranging from a "hard-boiled" approach [4] requiring strict proof of futility, *see Heit v. Baird,* 567 F.2d 1157, 1160–62 (1st Cir.1977), to a more lenient standard that requires only allegation of board approval of improper actions, *see Liboff v. Wolfson,* 437 F.2d 121, 122 (5th Cir.1971).

This court agrees with the well-reasoned decision of Judge Spencer in *Smith* as to several issues relevant here. First, there appears to be little difference between Virginia law and federal law on the demand issue; thus, the court need not resolve the question of which should apply. *Smith,* 668 F.Supp. at 522. Nor does precedent in this circuit indicate that this court should adopt a position at one extreme of the spectrum or the other. *Id.* at 523. "To be sure, the question of futility is, by its very nature, fact-oriented." *Id.* The court should examine all of the facts and stake out a position somewhere in the middle which accommodates both Rule 23.1's goal of leaving control of corporations to boards of directors and the goal of derivative suits which is to protect shareholders from corporate misdeeds or inaction. Such a moderate position was taken by the court in *Meltzer v. Atlantic Research Corp.,* 330 F.2d 946 (4th Cir.), *cert. denied sub nom., Scurlock v. Meltzer,* 379 U.S. 841, 85 S.Ct. 78, 13 L.Ed.2d 47 (1964). While the decision in *Meltzer* is twenty-five years old, it continues to be cited with approval, *see Womble v. Dixon,* 752 F.2d 80, 82 (4th Cir.1984), and remains binding upon this court. *See Smith,* 668 F.Supp. at 523.

■ The underlying factual question remains whether, under the totality of the circumstances, a demand on the board

**4.** *See Reilly Mortgage Group, Inc. v. Mt. Vernon Savings & Loan Assoc.,* 568 F.Supp. 1067, 1076 (E.D.Va.1983).

would have been futile. It is pointless to fix a standard of proof so high that in cases where the entirety of the facts clearly shows futility a plaintiff is nonetheless forced to engage in a fruitless demand upon the board. The two directors accused of wrongdoing in *Meltzer* controlled only 39% of the stock in the corporation; here, Sonny, through the VTA, controls 75% of the stock. It is clear that he "dominates" the board. It is also clear from what little documentary evidence has so far been produced that he is vehemently opposed to the plaintiff's position.[5] All of the other stockholders and the Corporation itself have joined in the motions to dismiss. This too, is a sign of the futility of any demand upon the Board. *See Liggett v. Roanoke Water Co.*, 126 Va. 22, 28, 101 S.E. 55 (1919) (futility of demand "made absolutely conclusive by the answer of the ... Company, which justifies and vigorously defends the action ... complained of.") The type of malfeasance alleged in *Meltzer*—waste of corporate assets, appropriation of corporate opportunities, pursuit of activities with no valid business purpose—overlaps to some extent the allegations in the present complaint. A perfect match is not required; *Meltzer* was concerned not with the type of wrongdoing, but with the actions of the directors in formulating and perpetuating the wrongdoing. *Smith*, 668 F.Supp. at 523.

The court acknowledges the state of flux which currently exists in this area of the law; however, a certain common sense approach needs to be taken. Where, as here, the totality of the facts alleged in the complaint, coupled with the position taken by the corporation on the motion, demonstrate that a request to the board would have failed to produce any action, futility has been shown and the requirements of Rule 23.1 have been met.[6] The motion to dismiss as to Count I shall be denied.

---

5. Of particular importance are the several letters included in the appendix to the complaint and incorporated into the complaint. A brief perusal of these indicates how futile a demand would have been.

6. Perhaps a more rigid standard would be required in the case of a public corporation; however, that issue is not presented here.

### 2. Count II

▪ Count II alleges a cause of action for common law oppression. As relief under this count plaintiff seeks a purchase of her shares at "a fair price" as well as attorney's fees. Defendants raise four objections: (1) plaintiff cannot sue for a forced purchase because her remedies are limited by statute to dissolution; (2) plaintiff has no standing to recover damages in her own right; (3) the allegations of fraud have not been pled with sufficient particularity; and (4) the allegations of oppression are legally insufficient. As discussed supra, issue 4 is not a proper one for consideration at a motion to dismiss. In light of the action taken on the first objection, the court does not reach issues 2 and 3. The determinative question is whether a cause of action for common law oppression continues to exist in Virginia, and if it does not, what remedies are available under statute. Defendants argue that the common law right has been replaced by Va. Code § 13.1–747 which limits a shareholder's remedy to dissolution; plaintiff argues that the statutory and common law causes of action co-exist.

As now written Va.Code § 13.1–747(A) states, in part:

> The circuit court in any city or county ... may dissolve a corporation:
>
> 1. In a proceeding by a shareholder if it is established that: ...
>
> b. The directors or those in control of the corporation have acted, are acting, or will act in a manner that is illegal, oppressive, or fraudulent.

The statute is remedial in nature and is to be liberally construed. *White v. Perkins*, 213 Va. 129, 135, 189 S.E.2d 315 (1972). Section 13.1–747 and its predecessor, § 13.1–94[7] have provoked little comment in

---

7. In 1985 the General Assembly completely rewrote the stock corporation laws of Virginia. Section 13.1–747 is not substantively different from § 13.1–94. *See* Murphy, *The New Virginia Stock Corporation Act: A Primer*, 20 U.Rich.L. Rev. 67, 131 (1985).

Virginia courts. Only four reported cases deal with the statute, and only three of those address the issue currently before the court.

In *White*, 213 Va. at 129, 189 S.E.2d 315, the circuit court found that the majority shareholder of a corporation had engaged in oppressive activities. Instead of dissolving the corporation, the court granted other equitable relief including the forced payment of a dividend and the payment of a severance bonus to the minority shareholder/employee. On appeal the Supreme Court of Virginia reversed the grant of equitable relief stating that "the 1968 amendment clearly shows an intent by the General Assembly that the alternatives provided there are exclusive rather than inclusive." *Id.* at 135, 189 S.E.2d 315.

Three years later, the court decided *Baylor v. Beverly Book Co., Inc.*, 216 Va. 22, 216 S.E.2d 18 (1975) *(per curiam)*. The plaintiff in *Baylor* brought suit seeking a dissolution or, in the alternative, "such other relief as the nature of the case may require." Defendants alleged that a by-law allowing the corporation to purchase plaintiff's shares at par value was binding on plaintiff. The lower court held the by-law to be binding; the Supreme Court reversed and remanded for trial stating:

> It [Va.Code § 13.1–94] provides an additional remedy for the protection of rights of stockholders, particularly minority stockholders. The remedy is in addition to the rights theretofore afforded stockholders under both the state law and the corporation's charter and by-laws.

216 S.E.2d at 19.

This court is thus faced with two opinions from the Commonwealth's highest court, issued within a relatively narrow time span, which on their surface appear to take opposite approaches to the issue of state law which is dispositive of this count. Defendants argue that *Baylor* stands only for the proposition that the *statutory* remedies are available in the face of restrictive by-laws. Some support is offered for this thesis, particularly in light of the present plaintiff's demand for relief, by the state court's statement that "by his suit, [plain-

tiff] did not offer to sell his shares of stock, but sought the relief which the law provides for stockholders whose rights are violated by oppressive conduct." *Id.* Defendants also argue that when the *Baylor* court stated that the § 13.1–94 remedies were in addition to those already available under state law, it meant the state corporation law, not the common law. Finally, defendants cite *Hamway v. Libbie Rehabilitative Center*, 10 Va.Cir. 245, 257 (Cir.Ct. for the City of Richmond 1987), a decision by a state circuit court, which they argue explicitly addresses the question of whether common law oppression remains viable in Virginia and concludes that it does not. Plaintiffs, relying heavily on the quotation from *Baylor*, argue that the statutory remedy is in addition to the common law right.

While the *Hamway* decision is not mandatory authority it is certainly persuasive, particularly for a federal court sitting by diversity. It postdates both decisions by the Commonwealth's highest court and cites each of them. It also appears that the *Hamway* court was faced with a case similar to the present in that both statutory and nonstatutory claims were made. *Id.* at 248. In *Hamway*, the court held that "relief is limited to that provided in § 13.1–94, including liquidation and receivership, but not damages or any other form of relief." *Id.* at 257. This court finds no reason to disagree with the *Hamway* decision. The language in *White* is very clear, and that in *Baylor*, though perhaps open to interpretation, also appears to limit remedies for oppression to those under § 13.1–747 or other state corporation laws.

The court therefore concludes that Va. Code § 13.1–747 supersedes the common law right of action for oppression and limits a plaintiff's remedies to those available under the statute, namely dissolution or the appointment of a custodian.

Plaintiff argues that even if state law limits the remedy for oppression claims, a federal court's equitable jurisdiction is not bound by the state statute; plaintiff cites *Tower Hill–Connellsville Coke Co. v. Piedmont Coal Co.*, 64 F.2d 817 (4th Cir.),

*cert. denied,* 290 U.S. 675, 54 S.Ct. 93, 78 L.Ed. 582 (1933), in support of this proposition. There are several problems with this argument. First, a familiar rule of equity precludes this court from taking equitable jurisdiction of this claim. Courts of equity do not take jurisdiction over claims where the plaintiff has a full, complete and adequate remedy at law. *Westbrook v. Westbrook,* 5 Va.App. 446, 364 S.E.2d 523, 529 (Va.App.1988), *quoting* 7A Michie's Jurisprudence *Equity* § 10 (1985). Virginia Code § 13.1–747 provides such a remedy; if BAP is dissolved, plaintiff will get the value of her shares as part of the dissolution, so that equitable jurisdiction is thus unnecessary. Secondly, the *Tower Hill* decision is of questionable authority now. *Tower Hill* preceded the landmark decision in *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) which marked a major turning point in the relationship between state and federal law in diversity cases. *Tower Hill's* holding that federal equitable jurisdiction is not constrained by conflicting state law appears at odds with post-*Erie* doctrine, and the case itself has not been cited for some time. Nonetheless, the court does not reach the question as it concludes that equitable relief is not appropriate on this Count for the reasons stated *supra.* The motion to dismiss as to Count II shall be granted.

### 3. Count III.

Count three is a claim for statutory dissolution of BAP under Va.Code § 13.1–747. Defendants obviously do not argue that this remedy is unavailable, but instead that the facts alleged are legally insufficient to show the illegal, oppressive or fraudulent conduct required by the statute. As stated *supra,* where a plaintiff's claim for relief is legally cognizable, Rule 12(b)(6) does not require the court to address the sufficiency of her factual allegations. Therefore, the motion to dismiss as to Count III will be denied.

### 4. Count IV.

Under Count IV plaintiff seeks an accounting of Mt. Clifton. On May 22, 1989 plaintiff sent a letter notifying the other partners of her intention to dissolve the partnership. As relief under the present count plaintiff seeks either a judgment in her favor for the value of her share as determined by an accounting, or a declaration that the partnership has been dissolved and an order winding up the business and distributing its assets.

Defendants argue that the partnership agreement eliminates a partner's unilateral right to dissolve the partnership and sets up a particular method for computing the value of a partner's share, thus eliminating the right to an accounting. Central to defendants' argument is the allegation that Mt. Clifton was created to carry out a particular purpose which has yet to be accomplished. Plaintiff argues that the partnership was created to carry out, and is carrying out, a general purpose with no point of completion.

No person may be forced to continue in a partnership against his will, 59A Am.Jur.2d *Partnership* § 818 (1987); thus the issue is not whether the plaintiff can dissolve Mt. Clifton, but whether she can dissolve it without becoming liable to the other partners for damages. Virginia has adopted the Uniform Partnership Act ("UPA"). Va.Code § 50–1 *et seq.* Virginia Code § 50–31(1)(b) permits a partner to dissolve a partnership by her express will "when no definite term or particular undertaking is specified" without violating the agreement between the partners. Section 50–31(2) provides that where the dissolution is not brought about according to the provisions of § 50–31(1) the dissolution will be in violation of the partnership agreement and under § 50–38(2) a partner will then be liable for dissolution damages. The dispositive issue, then, is whether the partnership agreement delineates a "particular undertaking" or not.[8]

---

**8.** Section 3 of the Partnership Agreement states: NATURE OF BUSINESS. The partnership shall engage in the business of a general or-

chard operation and such other businesses as the partners may from time determine.
Section 4 states:

No Virginia case has addressed the question of just what constitutes a particular undertaking in the context of the UPA. However, the purpose of the UPA was to bring the law of the several states into closer alliance and as a result decisions in other jurisdictions take on more weight than they might otherwise have. One case cited by the plaintiff is closely analogous to the present. In *Girard Bank v. Haley*, 460 Pa. 237, 332 A.2d 443 (1975), the partners had entered into a written partnership agreement for the purpose of "the operation, management, cultivation, maintenance, [and] leasing for profit [of] a tract of land and the buildings and improvements thereon erected," in this case a piece of rental, residential property. By letter Reid, one of the partners, notified the other partners that she was dissolving the partnership and desired to have the assets liquidated as quickly as possible. The partnership agreement in *Girard Bank* was similar to the present one in several respects, including a provision for the continuation of the partnership in the event of the death of one of the partners, a point the defendants argue militates against a unilateral right to dissolve.

Squarely addressing the question of particularity of the undertaking the court stated:

> [T]he sole undertaking to which it [the partnership agreement] refers is that of maintaining and leasing real property. This statement is merely one of general purpose, however, and cannot be said to set forth a 'particular undertaking' within the meaning of that phrase as it is used in the Act. A 'particular undertaking' under the statute must be capable of accomplishment at some time, although the exact time may be unknown and unascertainable at the date of the agreement. Leasing property, *like many other trades or businesses, involves enter-*

> *ing into a business relationship which may continue indefinitely; there is nothing 'particular' about it.*

*Id.* 332 A.2d at 447. (Emphasis added.)

The purpose given in the present Agreement is even less specific than that in *Girard Bank*. The Mt. Clifton agreement states that the purpose is to carry out a "general orchard operation;" no specific location or orchard is indicated.[9] The present agreement also allows the partnership to engage in "such other businesses as the partners may from time to time determine." This generally permissive language is the antithesis of a "particular purpose." A particular undertaking under the UPA must be capable of accomplishment *at some point;* though that date may not be presently determinable. *Girard Bank*, 332 A.2d at 447. The "operation of a general orchard business" and "such other businesses" as the partners choose are not undertakings capable of accomplishment at a point certain; by their natures, both may continue indefinitely.

The court finds that the Mt. Clifton partnership was not created to carry out a particular purpose as that term has been interpreted under the UPA. By its very language the agreement between the partners envisions an unlimited duration. Nothing in a review in Virginia law appears contrary to the *Girard Bank* decision. Thus the court finds that Va.Code § 50–31(1)(b) authorizes the plaintiff to dissolve the partnership at her express will. Her letter to the other partners accomplished this. So much of Count IV as seeks to dismiss the claim for dissolution shall be denied.

▇▇ The defendants next argue that the plaintiff is not entitled to an accounting since the agreement sets out a specific formula for calculating the value of a partner's share in Mt. Clifton. Virginia Code

---

DURATION. The term of the partnership shall be indefinite and shall continue until terminated as herein provided.

9. Indeed, as the defendants stated in their briefs, orchards naturally age and decline in productivity thus necessitating the creation or

purchase of replacement orchards to maintain a continuous supply of apples. If the partnership is to continue indefinitely it cannot rely on a single, particular orchard. The complaint alleges that Mt. Clifton has become liable as a guarantor of the debts of Wunder, just such a replacement orchard.

§ 50–43 provides that in the absence of an agreement to the contrary, the right to an accounting accrues to a partner at the date of dissolution. Paragraph 21 of the Agreement, defendants argue, is such an agreement to the contrary. The court finds little merit in this contention. Paragraph 21 of the Agreement is entitled "SALE OF INTEREST BY PARTNER" and requires that a partner wishing to sell his interest in the partnership must first offer it to the other partners and sets out a formula for calculating the price that the remaining partners will have to pay. This paragraph makes no mention of an accounting or a partner's right to such. It is concerned solely with computing an arbitrary value in the event of a sale of a partner's interest; it is not concerned with dissolution or the peculiar need for an accounting which may arise at that point.

The court does not read the language of paragraph 21 to apply to the issue of a partner's right to an accounting, which right arises naturally at the time of dissolution under the UPA. So much of the motion as seeks to dismiss the claim for an accounting shall be denied.

■ At this point it does not seem appropriate to impose a trust on the assets allegedly misapplied or wasted by Sonny in the Wunder Orchards venture, nor on the profits which have accrued to Sonny as a result of the Wunder operation. Insufficient discovery has taken place to merit the imposition of such a sanction, particularly where the existence of those assets, let alone their nature or location, has yet to be determined. For these reasons, so much of the defendants' motion as seeks to dismiss the request for an imposition of a trust upon certain assets of Mt. Clifton which may have been wasted or misapplied, and certain profits which have accrued to Sonny Bowman shall be granted. By this action, however, the court does not intend to restrict its own ability to impose a trust, or such other remedy as seems appropriate, if further discovery reveals that such action is necessary.

5. Count V.

Count V alleges that Sonny has breached his fiduciary duties to the plaintiff as a director and officer of BAP, as a partner in Mt. Clifton and as a trustee of the Patricia Jordon Trust. Plaintiff seeks a variety of remedies under this count. Defendants move to dismiss, once again arguing that plaintiff has failed to adequately support her claims with facts. Without belaboring the point, the court again notes that a 12(b)(6) motion is not designed to test the factual allegations of the complaint. The motion to dismiss Count V shall be denied.

B. *Motion to Transfer*

■ Having addressed the defendants' motion to dismiss and concluded that the bulk of the case remains viable, the court must now consider the motion to transfer the case to the Harrisonburg Division of this court.

The plaintiff in this case is a resident of New Mexico. All of the individual and corporate defendants are residents of the Western District of Virginia, except for defendant Zirkle who is a resident of Maryland. It is undisputed that all of the Virginia defendants either reside or have their principal place of business in the Harrisonburg Division of the Western District. The question is thus whether, in light of these facts, the plaintiff's election to bring this action in the Charlottesville Division may stand.

28 U.S.C. § 1391(a) states "A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in the judicial *district* where all plaintiffs or all defendants reside, or in which the claim arose." (Emphasis added.) Venue is proper in the Western District since the claims arose here. Section 1391(a) makes no reference to Divisions. 28 U.S.C. § 1393 addressed the question of divisional venue; however, it was repealed in February of 1989. Finally, 28 U.S.C. § 1404 authorizes the court, for the convenience of the parties and witnesses, in the interest of justice, to transfer any civil action to any other division or district where it may have

been brought. 28 U.S.C. § 1406(a) also authorizes a transfer where the court finds venue to have been improperly laid.

The repeal of § 1393 casts some doubt on whether any vitality remains in the concept of divisional venue. At least one commentator has stated that "there is no longer any requirement in federal civil cases that venue be laid in a particular division within a district." C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure*, § 3809 (1989 Supp.). The court in *Moysi v. Trustcorp, Inc.*, 725 F.Supp. 336 (N.D.Oh.1989) however, took a different approach. Citing a February 2, 1989, memorandum from the Administrative Office of the U.S. Courts the court held that divisional venue remained viable stating:

> the purposes of the repeal of § 1393 were to provide the Courts with greater flexibility to accommodate the convenience of the parties and promote the efficient delivery of judicial services.... If Congress had intended to prohibit divisional venue, they would not merely have repealed the requirement of divisional venue, but would have explicitly prohibited it.... [T]he repeal of § 1393 was not for the purpose of prohibiting divisional venue, but rather not requiring it.

*Id.* at 338. A distinguishing factor is that the *Moysi* court was faced with specific local rules that established divisional venue requirements.[10] No such rules exist in the Western District of Virginia, though there are various standing orders which assign certain counties to the various divisions. *Moysi* is concerned with whether the particular local rules at issue survived the repeal of § 1393. Where, as here, there is no preexisting rule on venue, the question is different.

Plaintiff concedes that it would be more convenient to have this case heard in the Harrisonburg Division: most if not all of the witnesses, parties and documents are located there; the causes of action arose there; and such remedies or actions as may be required will most likely be carried out there. The cases cited by the defendants are more than ample to support a transfer under the convenience test. Plaintiff's stated rationale for filing the case in the Charlottesville Division, and for desiring to keep it here, is that the stature of the corporate defendant as a large, local employer in the Harrisonburg Division will make a fair trial and impartial jury more difficult to achieve.

The court is faced with a novel question, at least in this jurisdiction. First, forum shopping is not an issue here since the same law will obviously apply in either case, and the undersigned sits as the usual judge in both divisions so the case will very likely be heard by the same judge whatever the outcome. While both sides readily concede that trial of the case in Harrisonburg may be more convenient, the interest of justice, "a term broad enough to cover the particular circumstances of each case," *Stolz v. Barker*, 466 F.Supp. 24, 26 (M.D.N.C.1978), may weigh in favor of a Charlottesville venue. Finally, while the plaintiff's choice of venue is entitled to less weight than normal when she chooses a jurisdiction other than that of her residence, it is still a factor for consideration.

The deciding factor is the repeal of § 1393. This court agrees with the court in *Moysi* that the purpose in repealing § 1393 was not to prohibit divisional venue, but rather not to require it. Where divisional venue is mandated by local rule, as in *Moysi*, those mandates must be complied with. However, where local rules are silent, this court agrees with Wright and Miller: there is no longer any requirement in federal civil cases that venue be laid in a particular division within a district. Under the plain language of Title 28, U.S.C., venue remains a question only on the District level.[11] The motion to transfer this case to the Harrisonburg Division will be denied.

---

**10.** See Chapter 15, Local Rules of the United States District Court for the Northern District of Ohio.

**11.** The court does not see this as opening the door to random filings within the Western District. Given the economics of bringing a case in federal court, only in an exceptional case would a party bring one in a division other than that which would have been required by § 1393, and in such exceptional cases a motion to transfer to another division would most likely have been

## III

The defendants, in their opening brief, introduced analogies to this case from Greek mythology, likening the gifts bestowed upon the Bowman children by their parents to the golden apple of discord thrown out by Eris which led ultimately to the Trojan war. Defendants cast plaintiff in the role of the instigator of that devastating conflict. Plaintiff, in turn, assigns to Sonny the role of Paris, coming upon the land and taking what rightfully belongs to others thus bringing the war upon himself. While the court expresses no opinion as to the propriety of this assignment of roles, it unfortunately cannot question the validity of the underlying choice of mythological background. The court fears that the parties here, like Odysseus, Agamemnon and so many others, may return from what has no doubt already become a costly war, and will likely be a lengthy one, to find that their own houses have been beset by disarray and ruin.

Like the Greeks and Trojans, the parties here need the services of a disinterested mediator. Unfortunately a court may only apply the law; it may not negotiate with the parties.

In conclusion, the defendants' motion to dismiss Counts I, III, V will be denied. The motion to dismiss Count IV will be denied as to the claim for a dissolution and the claim for an accounting. The motion to dismiss Count II shall be granted. The motion to dismiss Count IV, to the extent that it seeks an imposition of a trust upon assets allegedly wasted or misapplied by Mt. Clifton or profits wrongfully accruing to Sonny Bowman, will likewise be granted. The motion to transfer this case to the Harrisonburg division will be denied.

granted. In the event that abusive filings do become a problem, this District should perhaps consider a local order similar to that existing in the Northern District of Ohio.