J-A22001-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| RITCHIE HAYES | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| BRITTANY GORING, AND ICARE | : | No. 2228 EDA 2024 |
| HOME HEALTH, LLC | : | |

Appeal from the Judgment Entered September 16, 2024
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): 190303621

BEFORE: LAZARUS, P.J., SULLIVAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LAZARUS, P.J.: **FILED OCTOBER 20, 2025**

Ritchie Hayes appeals from the judgment, entered in the Court of Common Pleas of Philadelphia, following the trial court's verdict in favor of Hayes in this breach of fiduciary duty action. After review, we affirm.[1]

In 2009, Hayes and Brittany Goring began a personal relationship and, in 2012, were married. In February 2015, Hayes and Goring co-founded ICare Home Health, LLC (ICare/the LLC), a licensed non-medical company that provides basic assistance and home-nursing services to customers in the greater Philadelphia area.[2] The parties agreed to be 50%/50% members in the LLC and, in February 2015, a Certificate of Organization (COA) for ICare

---

[*] Former Justice specially assigned to the Superior Court.

[1] Appellee has not filed a brief in the matter.

[2] Hayes made a capital contribution of $8,000.00 to start the LLC.

was filed with the Commonwealth of Pennsylvania. The COA listed Hayes and Goring as "Organizers."[3] Goring agreed to be in charge of the LLC's administrative and financial matters, while Hayes was in charge of client development and overall business management.

In August 2015, Hayes signed an employment application with ICare, authorizing him to make home visits as a healthcare worker on behalf of the LLC during the calendar years 2015 and 2016. In his role as an employee, Hayes filled in for healthcare workers who called out of work and was paid a salary. During this time period, Hayes was also listed as a "partner" of the LLC on ICare's tax returns. Additionally, the LLC's tax returns also noted that ICare had two partners.

In January 2017, the parties' marriage dissolved. On January 9, 2017, the parties had an altercation at the ICare office and police were called. Goring claimed that Hayes renounced his membership interest in the LLC following the incident via text messages he sent her dated January 9-18, 2017. Hayes, however, denied that he withdrew as a managing member of the LLC at this time.

Following a disagreement between Hayes and Goring over their respective shares of profits from the LLC, Hayes filed a civil action on March 27, 2019, alleging Goring breached her fiduciary duties in connection with their joint membership of ICare. **See** Plaintiff's Complaint, 3/27/19, at 5-6. The complaint also: (1) requested an accounting of ICare; (2) sought punitive

---

[3] No written operating agreement exists for the LLC.

damages due to Goring's "outrageous and egregious . . . disregard of [Hayes']

rights;" and (3) asked that the LLC be dissolved. *Id.* at 6-7. In the complaint,

Hayes alleged that "in February of 2017, Goring changed the locks on the

doors to ICare . . . [in an] attempt to fully carry out her plan of obtaining full

control of ICare." *Id.* at 4. Notably, the complaint also included an allegation

that, in July 2015, Goring forged Hayes' signature on a certificate of

amendment to the COA that removed Hayes as a member of ICare.[4] *Id.*; *see

also* Plaintiff's Exhibit 4.

On June 12, 2023, the court held a bench trial. Both Hayes and Goring

testified. At the close of Hayes' case, the defense moved for a directed verdict,

which the trial court denied. *See* N.T Bench Trial, 6/12/23, at 77-80. At the

conclusion of the trial, the court acknowledged it needed to review a transcript

of the proceedings before it could issue its final findings of fact and conclusions

of law. *See id.* at 141. Subsequently, Goring's counsel filed a motion to

reopen the record in order to admit financial documents[5] from 2016 and 2017.

_____

[4] Ultimately, the trial judge found that Goring never showed Hayes the amendment to the COA in 2015 and, in fact, "hand-wrote" on the amendment that Hayes "will be removed from the LLC." *Id.* at 3. In fact, the trial judge concluded that Hayes' signature had been forged on the document and, therefore, the court did not believe he was dissociated from the LLC as of that date. *See id.*

[5] Those documents included Hayes' employee paychecks/paystubs, Goring's personal tax records, and checks issued to Hayes for expense items. *See* N.T. Motion Hearing, 9/15/23, at 9-12. The trial court notes in its Pa.R.A.P. 1925(a) opinion, that the exhibits admitted at the supplemental hearing "relate [only] to Hayes' [employment] relationship with ICare [and] not his membership in the LLC and [that] these post-trial exhibits were not relevant
*(Footnote Continued Next Page)*

- 3 -

The court granted the motion and held a supplementary evidentiary hearing on September 15, 2023. At the outset of the hearing, the trial judge encouraged the parties to settle the matter because, "from the [c]ourt's perspective, [] there's no indication that [] Hayes ever left the partnership, ever." N.T. Motion Hearing, 9/15/23, at 5. *See also id.* at 6 (court stating, "Based on what I know so far about this case, having heard the trial, [] Hayes was never ever removed as a partner in this project."). The court also noted that it was wrestling with the issue of punitive damages where Goring, "a fiduciary member[,] submit[ted] a document to the Bureau of Corporations that could trigger an egregious mistake by a fiduciary triggering punitive damages." *Id.* at 14.

On December 1, 2023, the trial court entered findings of fact and conclusions of law ruling in favor of Hayes on the breach of fiduciary duty claim, awarding him $21,636.50 in damages representing one-half of the LLC's profits earned through 2016, and ruling in favor of Goring on all remaining counts. *See* Findings of Fact and Conclusions of Law, 12/1/23, at 12. The court specifically found that: Hayes and Goring formed ICare together as both "organizers and members;" the parties did not execute a written operating agreement; the parties had "equal rights as members to manage and conduct the activities and affairs of ICare[;]" Goring breached her fiduciary duty of care to Hayes by engaging in willful misconduct that

_____

to [its] findings under 15 Pa.C.S.A. § 8861(1) and § 8862(a)." Trial Court Opinion, 3/19/25, at 2 n.2.

- 4 -

prevented him from accessing ICare's financial information and accounts; Hayes was both an employee and member of ICare;[6] Hayes did not exercise any power or express will to "dissociate, rightfully or wrongfully, from ICare[] as a member of the [LLC] until January 12, 2017, when, in text messages, he gave Goring notice of his express will to withdraw his membership in ICare which he was 'categorizing by January 12, 2017[,] as Goring's company[.]'" *Id.* at 10-11.

Hayes filed a timely post-trial motion asking the court to modify its verdict, particularly with regard to his request for punitive damages, where Goring "engaged in willful misconduct and the crime of forgery," and where the court "erred in relying upon text messages to conclude that Hayes had voluntarily ceased his membership in ICare [] in 2017." Post-Trial Motion of Plaintiff Ritchie Hayes, 12/8/23, at 2-3. The trial court denied Hayes' post-

_____

[6] As the trial court acknowledged, an individual can be both a member and an employee of an LLC at the same time. *See Weaver Hauling and Excavating, LLC v. Dep't of Labor and Indus.*, 132 A.3d 557 (Pa. Cmwlth. 2016). Thus, Hayes' statements that he would continue to work for the LLC can support a finding that he continued to work as an employee but was no longer a partner of ICare entitled to share in the company's profits.

trial motion on July 26, 2024.[7]  Hayes filed a timely notice of appeal[8] and presents the following issues for our consideration:[9]

> (1)  Can a person be held to have withdrawn as a member of a[n] LLC, and thus dissociated from it, when there is no competent evidence admitted into the record of any communication effectuating such withdrawal?
>
> (2)  Can a person be held to have withdrawn as a member of a[n LLC], and thus dissociated from it, by sending generalized

_____

[7] The record does not reflect why it took the trial court 231 days to rule on Hayes' post-trial motion.  However, under Pa.R.C.P. 227.4, the prothonotary is authorized to enter judgment upon praecipe of a party, *see infra* n.8, when a party has filed "one . . . timely post-trial motion[] . . . and the court does not enter an order disposing of [the] motion[] within one hundred twenty days after the filing of the first motion."  Pa.R.C.P. 227.4(b); *see* Explanatory Comment to Pa.R.C.P. 227.1 (1995) (recognizing that prior to amendment, "parties to an action had no recourse when a motion for post-trial relief remained pending and undecided.").

[8] The trial court denied Hayes' post-trial motion on July 26, 2024; Hayes filed a notice of appeal on August 21, 2024, from the trial court's findings of fact and conclusions of law and the order denying his post-trial motions.  On September 12, 2024, the trial court wrote a letter to the Deputy Prothonotary of this Court asking the Court to quash Hayes' notice of appeal because it was filed "before entry of judgment."  Letter, 9/12/24, at 1.  The trial judge requested this Court "quash and remand" the matter so that it could "reduce [its] post-trial order to judgment with interest and delay damages[, *see*] Pa.R.A.P. 301[.]"  *Id.*  On that same date, our Court directed Hayes to praecipe the trial court's Prothonotary to enter judgment on the trial court's decision.  *See* Order (2228 EDA 2024), 9/12/24.  On September 16, 2024, Hayes praeciped the trial court to enter final judgment on its verdict.  On that same date, the court entered final judgment on its verdict in Hayes' favor.  *See* Trial Court Docket Entries, 9/16/24, at 24.  Hayes filed an unnecessary amended notice of appeal on October 2, 2024, from the entry of final judgment.  Nevertheless, we deem his appeal proper.  *See* Pa.R.A.P. 905(a)(5) (where appeal prematurely filed from interlocutory order, appeal is subsequently perfected when final, appealable order entered).

[9] The trial court did not order Hayes to file a Rule 1925(b) concise statement of errors complained of on appeal.

> text messages that do not mention or reference the member's interest in the LLC?
>
> (3) Did the trial court err when it made a factual finding about Hayes' withdrawal from ICare based on evidence that was never admitted into the record?

Appellant's Brief, at 4-5.

Hayes claims the trial court improperly determined that he dissociated from the LLC because there was no competent record evidence "of any communications effectuating such withdrawal." *Id.* at 4. Relatedly, Hayes asserts that the trial court incorrectly determined that he withdrew from ICare in 2016 where "there is no record evidence supporting this finding[ because] the text messages used as the basis for it were never admitted into evidence." *Id.* at 12. Finally, Hayes claims that because there was insufficient evidence to support the finding that he conveyed an express will to dissociate from the LLC in 2017, he is entitled to a share of the LLC's profits from 2017-2020, totaling $2,918,000.00. *Id.*

"It is clear that in certain circumstances a partnership may be dissolved by the express will of any partner at any time." *Canter's Pharmacy, Inc. v. Elizabeth Assoc.*, 578 A.2d 1326, 1329 (Pa. Super. 1990). "[W]hen a partner effects a dissolution it simply means that [that] partner is no longer associated with the business of the partnership." *Id.* Moreover, when a partnership has no written agreement or a partnership agreement is silent with regard to dissolution, the relevant provisions of partnership statutes control. *Girard Bank v. Haley*, 332 A.2d 443, 446 (Pa. 1975). Similarly, we conclude that where there is no written operating agreement for an LLC, like

in the instant matter, the Pennsylvania Uniform Limited Liability Company Act (ULLCA)[10] controls.

Under the ULLCA, a member of a member-managed LLC owes the company and its other members the fiduciary duties of loyalty and care and of good faith and fair dealing. **See** 15 Pa.C.S.A. §§ 8849.1(a)-(d). Section 8861 of the ULLCA lists 17 "events" by which a member may dissociate from an LLC. **See id.** at §§ 8861(1)-(17). Relevant to this matter, "[a] person is dissociated as a member when . . . [t]**he** [**LLC**] **knows or has notice of the person's express will to withdraw as a member**, except that, if the person specified a withdrawal date later than the date the company knew or had notice, on that later date." **Id.** at § 8861(1) (emphasis added). Moreover, "[a] person has the power to dissociate as a member [of an LLC] at any time, rightfully or wrongfully, by withdrawing as a member by **express will** under [sub]section 8861(1)[.]" **Id.** at § 8862(a) (emphasis added).

The issue regarding the quality and quantum of evidence necessary to prove a member's "express will" to dissociate from a Pennsylvania LLC seems to be an issue of first impression in this Commonwealth. Thus, we turn to Pennsylvania partnership-dissolution cases and jurisdictions with similar LLC-disassociation statutes to guide us.

In **Canter**, **supra**, our Court found that the appellant's commencement of a separate equity action alleging various breaches of the partnership agreement "effectively expressed [the] desire to dissolve the partnership at-

---

[10] **See** 15 Pa.C.S.A. §§ 8811-8898.

will." **Id.** at 1329. In **Decandia v. Rinaldi**, No. A-4651-18T4c, *9, *15 (N.J. Super Ct. App. Div. 2020), the New Jersey Superior Court determined that a plaintiff's act of turning over his certificates to the LLC's attorney "demonstrated his express will to withdraw as a member" of the LLC, and that the trial court's determination was supported by the following additional evidence: (1) plaintiff sought to avoid criminal liability related to investigation of LLC; (2) testimony indicating plaintiff turned in membership certificate after another LLC member suggested he do so to effect resignation; and (3) evidence showed plaintiff did not receive profit-sharing compensation after he surrendered certificates. **Id.** Similarly, in **Cameron v. Rohn**, No. 10-126 (D.V.I., Feb. 14, 2012), the United States District Court for the District of the Virgin Islands, St. Croix Division, determined that plaintiffs dissociated from their law office, an LLC, when they submitted signed notices of member withdrawal to defendant. **Id.** at * 45-*46.

Instantly, the trial court noted that a member need not utter "magic words" in order to dissociate from an LLC. Rather, the trial judge opined that "what is required is an expression that conveys a clear intention to dissociate." Trial Court Opinion, 3/19/25, at 8.[11] Ultimately, the trial judge concluded that

---

[11] The fact that Hayes' purported dissociation occurred contemporaneously with the parties' turbulent martial demise undoubtedly muddies the waters regarding Hayes' express will to withdraw from the LLC. **See** Trial Court Opinion, 3/19/25, at 3-4 ("In January 2017, Hayes'[] and Goring's relationship reached a bitter end following a violent argument at ICare's business office during [which] police were called. **Along with their marriage break-up, their business broke apart too**, when Goring received a series of text messages from Hayes.") (emphasis added).

Hayes "knowing[ly] withdr[ew] from a managing membership of ICare," based

on the following text messages he sent to Goring:

- "Don't send me anything you don't owe me anything signed [] Hayes just take care y'all make sure you do that!"

- "I won't accept it I promise you my first step phone no contact y'all need to be free and unbothered this is what hampered me from performing so I don't want to be the cause of y'all progressing;"

- "I don't want nothing from you;"

- "Thanks for letting me use van and I'll continue to work but I can't feel like me one night him next I don't sleep where someone else sleep so we just be cordial until I can get my business open, I work for you and that's it we'll figure out something with [child's name] going forward to keep him focused [sic] hope you get everything you're looking and working for!  (double heart emoji)."

Findings of Fact & Conclusions of Law, 12/1/23, at 5.[12]

Case law has established that authentication is a prerequisite to admissibility of a text message. ***Commonwealth v. Koch***, 39 A.3d 996, 1005 (Pa. Super. 2011).  "[A]uthentication of electronic communications . . . requires more than mere confirmation that the number or address belonged to a particular person.  Circumstantial evidence, which tends to corroborate the identity of the sender, is required."  ***Id.***, citing ***In the Interest of F.P., a Minor***, 878 A.2d 91 (Pa. Super. 2005).  Additionally, text messages can

---

[12] Copies of these text messages are not a part of the certified record on appeal.  However, since we conclude that the parties' substantive testimony sufficiently proved Hayes' express will to dissociate from the LLC, we need not review them for purposes of disposing of this appeal.  ***See infra*** at 11-12.

also be admitted as an opposing party's statement. **See** Pa.R.E. 803(25). To constitute a party admission, authorship of the statement must be proven. **Koch**, **supra** at 1006.

Instantly, Hayes testified that he was the author of the text messages, that he sent the messages to Goring, and that he was the only one who had access to his cell phone. **See** N.T. Bench Trial, 6/12/23, at 67-71 (Hayes testifying on cross-examination that he sent text messages from his cellular phone number to Goring); **id.** at 70 (Hayes testifying on cross-examination he was only person who had access to his cell phone). Thus, the foundation and authentication for the text messages were properly established. **Koch**, **supra**. However, because the text messages were never moved into evidence, the trial judge, as the trier of fact, was not permitted to consider them.[13] **See Commonwealth v**. **Snowden**, 330 A.3d 422, 428 (Pa. Super. 2025) (en banc) ("[E]xhibits that are merely marked for identification and submitted by the offering party do not constitute evidence on which a finder of fact can rely. Rather, [i]t is fundamental and essential that . . . a document must be offered to and admitted by the court before it may be considered evidence[.]") (internal citations and quotation marks omitted).

---

[13] To the extent that the court relied upon the actual text messages themselves in concluding that Hayes dissociated from the LLC as of January/February 2017, **see** Findings of Fact and Conclusions of Law, 12/1/23, at 5 (trial court concluding Hayes "knowing[ly] withdr[ew] from a managing membership of ICare" **based on January 2017 text messages** he sent to Goring) (emphasis added), we find this was error. **Snowden**, **supra**. However, we note that as an appellate court, we may affirm the trial court, where it is correct, on an alternative basis or legal ground. **Matos v. Rivera**, 648 A.2d 337, 340 (Pa. Super. 1994).

Notwithstanding counsel's failure to admit the text messages at trial,[14] both parties testified regarding the messages.  **See** N.T. Bench Trial, 6/12/23, at 102 (Goring testifying on direct examination, with no objection by opposing counsel, that Hayes' text messages meant he no longer wanted to be a part of the LLC); **id.** at 69-70 (Hayes testifying he "left" company after February 2017 fight with Goring in company's office where cops were called and he was "removed" from office).  Specifically, Goring testified that Hayes worked at ICare from 2015 until "he was violent and came down and made this scene at the office in 2017."  **Id.** at 95.  Hayes, himself, testified on cross-examination that he "left" the company in February 2017 after "[the parties] had an argument and the cops were called and [he] was removed from the office[.]" **Id.** at 69.

The trial court noted that after defense counsel read the contents of Hayes' text messages to Goring at trial, she "testified that she understood the words read to her . . . and that she understood that the texts were from Hayes who told her he was, among other things, leaving ICare altogether."  Trial Court Opinion, 3/19/25, at 4.  **See also** N.T. Bench Trial, 6/12/23, at 102 (Goring testifying, "I assumed that like [Hayes] meant no more, like forever indebted for $5[,]000[.00.]"); **see generally id.** (Goring generally testifying as to what she understood text message from Hayes stating, "I don't owe you

_____

[14] In its Rule 1925(a) opinion, the trial court concedes that the text messages were actually authenticated at trial and, had counsel moved for their admission, the court would have admitted them.  **See** Trial Court Opinion, 3/19/25, at 4 n.4.

anything," meant). Based on Goring's testimony, the court determined that Hayes was due to share in member profits only through early 2017. *See* Trial Court Opinion, 3/19/25, at 4 ("We find Hayes'[] statements read to [] Goring at trial state Hayes'[] express will to dissociate from ICare[ in January 2017.]"); *see also* N.T. Bench Trial, 6/12/23, at 72 (court stating, "So what we've established on that is that there was some kind of employment membership, whatever relationship through[] at least February of 2017"); Findings of Fact and Conclusions of Law, 12/1/23, at 2 (court concluding that "Hayes voluntarily withdrew from his membership in ICare during the marital break-up [in 2017]").[15]

We conclude that the trial court did not abuse its discretion in determining that, based upon Goring's testimony as the recipient of Hayes' text messages, she believed that Hayes dissociated from ICare in early 2017. *See Mackay v. Mackay*, 984 A.2d 529, 533 (Pa. Super. 2009) ("When the trial court sits as fact[-]finder, the weight to be assigned the testimony of the witnesses is within its exclusive province, as are credibility determinations, [and] the court is free to choose to believe all, part, or none of the evidence

---

[15] Notably, Hayes' attorney did not conduct redirect examination of Hayes after he testified that he left the LLC in February 2017, nor did he object to the trial judge's statement, "[s]o what we've established on that is that there was some kind of employment membership, whatever relationship through at least through February of 2017." *See* N.T. Bench Trial, 6/12/23, at 71-72. However, Hayes' counsel did object to Goring being questioned about the text messages on the grounds that they had not been admitted into evidence. *Id.* at 99. Then, after Goring testified that the text messages came from Hayes' cell phone number, counsel continued, without objection, to question her about how she interpreted the content of the messages. *See id.* at 101-02.

presented."); 15 Pa.C.S.A. § 8862(a) ("A person has the power to dissociate as a member at any time, rightfully or wrongfully[.]").

Judgment affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/20/2025